**DOHME, Appellant,**

v.

**EURAND AMERICA, INC., Appellee.**

[Cite as *Dohme v. Eurand Am., Inc.,* 170 Ohio App.3d 593, 2007-Ohio-865.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 21520.

Decided March 2, 2007.

David M. Duwel and Todd T. Duwel, for appellant.

Todd D. Penney, for appellee.

Grady, Judge.

{¶ 1} Plaintiff, Randall Dohme, appeals from a summary judgment for defendant, Eurand America, Inc., on Dohme's wrongful-discharge claim.

{¶ 2} Eurand hired Dohme on January 12, 2001, as an engineering supervisor. In August 2001, there was a fire on Eurand's property. Dohme pulled a fire alarm, but the alarm did not activate. Dohme had to run to another fire-alarm station to pull the alarm. Dohme was taken to the hospital and treated for smoke inhalation. Subsequently, Dohme reported what he believed to be fire-safety problems to a fire captain with the Vandalia Fire Department.

{¶ 3} During his first 18 months with Eurand, issues arose regarding Dohme's interaction with his co-workers and with an independent contractor. On July 9, 2002, Dohme was reassigned to assume the duties of Facilities/Computerized Maintenance Management System Administrator, which included responsibilities relating to Eurand's fire system. On November 4, 2002, Dohme was granted leave by Eurand under the Family Medical Leave Act. He returned to work on a full-time basis on January 20, 2003.

{¶ 4} On March 21, 2003, Eurand sent an e-mail message to its employees advising them that an insurance inspector would be visiting Eurand on March 24 and 25, 2003, to perform a site survey and risk assessment. Dohme believed that the insurance inspector was there to rate how safe the facility was. Eurand instructed its employees not to speak to the inspector, but identified certain employees in the e-mail who had permission to speak to the inspector. Dohme was not identified in the e-mail as an individual with permission to speak to the inspector.

{¶ 5} According to Dohme, on March 25, 2003, he was asked by an employee of Eurand to greet the inspector, because another Eurand employee was unavailable to do so. Dohme approached the inspector in Eurand's lobby and presented the inspector with a computer printout that showed overdue fire-alarm inspections. A scheduled March 20, 2003 overdue fire-alarm inspection was not reflected on the printout. Dohme told the inspector that he might want to check what happened with that inspection. Dohme testified that he was concerned that he would be blamed for the omission. On March 27, 2003, Eurand fired Dohme.

{¶ 6} On June 9, 2003, Dohme commenced a civil action against Eurand, alleging violations of the Fair Labor Standards Act, as adopted and codified in R.C. 4111.01, the Family and Medical Leave Act, and Ohio public policy relating to workplace safety. Pursuant to Sections 1331, 1441, and 1446(b), Title 28, U.S.Code. Eurand removed the action to federal court. On November 29, 2004, the federal court sustained Eurand's motion for summary judgment on the

Family and Medical Leave Act claim, and supplemental state claims were transferred to the common pleas court.

{¶ 7} Eurand moved for summary judgment on Dohme's two remaining state claims. On November 21, 2005, the trial court granted summary judgment on the wrongful-discharge claim and denied summary judgment on the R.C. 4111.01 claim. Dohme elected to voluntarily dismiss his R.C. 4111.01 claim in order to perfect his right to appeal the summary judgment on his wrongful-discharge claim. On March 7, 2006, the trial court determined that there was no just reason for delay of any appeal of its summary judgment. Dohme filed a timely notice of appeal.

### ASSIGNMENT OF ERROR

{¶ 8} "The trial court erred as a matter of law by awarding Eurand judgment on the issue of Dohme's wrongful discharge claim."

{¶ 9} The general rule is that absent an employment contract, the employer/employee relationship is considered at-will. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 382, 639 N.E.2d 51. Thus, the employer may terminate the employee's employment for any lawful reason, and the employee may leave the relationship for any reason. Id. There are exceptions to the general rule. In *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 235, 551 N.E.2d 981, the Supreme Court held that an exception to the traditional common law doctrine of employment-at-will exists where an employee is terminated wrongfully in violation of public policy. Public policy is generally discerned from the United States and Ohio Constitutions, statutes, administrative rules and regulations, and common law. *Painter*, 70 Ohio St.3d at 384, 639 N.E.2d 51.

{¶ 10} To state a claim of wrongful discharge in violation of public policy, a plaintiff must demonstrate the following four elements: (1) a clear public policy exists and is manifested in a state or federal constitution, statute, administrative regulation, or common law (the "clarity" element); (2) the dismissal of employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the "jeopardy" element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation" element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the "overriding justification" element). (Citation omitted.) *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653. The clarity and jeopardy elements involve relatively pure law and policy questions and are questions of law to be determined by the court. Id. at 70, 652 N.E.2d 653. The jury decides factual questions relating to causation and overriding justification. Id.

{¶ 11} The trial court granted summary judgment based solely on Dohme's failure to establish the clarity element. The trial court held:

{¶ 12} "Plaintiff fails to articulate what public policy Defendant violated when it discharged Plaintiff for such action. Although Plaintiff claims that he was discharged for voicing a concern for work place safety, the insurance Representative's purpose for being on the premises was to provide Defendant an insurance quote. Moreover, Plaintiff's statements did not indicate a concern for work place safety. The plain language of his comments only indicates his own suspicion that the missing inspection report is an attempt by Defendant to set him up for a deficient job performance. The only relevance safety has in the instant case is that the missing report contained the results of a fire alarm system inspection. Based on the facts presented to the court, it appears that due to the deteriorating relations between the parties at the time of the incident, the content of the report would not have changed Plaintiff's basis in making the statements.

{¶ 13} "Because Plaintiff can articulate no public policy of which Defendant is in violation, the court need not and can not analyze the other elements established by the Supreme Court in *Painter*. As such, because the court was presented no public policy which prohibits an employer from discharging an employee for disobeying an order, not in violation of any statute or any other regulation, the court finds that no genuine issue of material fact exists as to the basis of Plaintiff's discharge."

{¶ 14} The trial court placed great emphasis on Dohme's intentions when he confronted the underwriter. Dohme testified as follows regarding his encounter with the insurance inspector:

{¶ 15} "Q: When you approached [the inspector] in the lobby that day, did you identify your role with Eurand?

{¶ 16} "A: Yes, I did.

{¶ 17} "Q: What did you tell him?

{¶ 18} "A: I said something to the fact that here's my card and I had scratched out engineering supervisor and I told him that I used to be engineering supervisor and I'm in charge of the fire safety stuff and also in charge of the computer—the CMMS system * * * And he said what's that. I said well, I got the feeling that they're trying to make it look like I'm not doing my job and I got the forms out and I showed him on January 20 the fire alarm was overdue and February 20 the same report and on March 20 it was missing. It didn't say it had been done, not done, it was nowhere in the system. I just said you might want to find out what happened with that inspection, and that was the end of our conversation.

{¶ 19} " * * *

{¶ 20} "Q: And at that point in time, I believe your testimony was earlier you were no longer in charge of the fire alarm?

{¶ 21} "A: I wasn't even doing anything with it, but my job description said I still should have been. That's what worried me. When I got my appraisal, it's back here, I got dinged for stuff I wasn't doing the first six months of the year and some things that I shouldn't have been doing the second six months of the year.

{¶ 22} "I was under the impression that even though this is on my job description, he's still going to hold me accountable for it. That's what I told [the inspector], somebody made this disappear and I'm afraid they're trying to make it look like I wasn't doing my job."

{¶ 23} The trial court stressed the fact that Dohme was not motivated by a desire to report workplace safety issues to the inspector but, instead, to protect himself from complaint or criticism. But the employee's intent is largely irrelevant in an analysis of the clarity element of a wrongful-discharge claim. What is relevant is whether Dohme did in fact report information to the inspector that encompassed a public policy favoring workplace safety. If Dohme did so, then the trial court erred in granting summary judgment.

■ {¶ 24} The Supreme Court has recognized the abundance of Ohio statutory and constitutional provisions that support workplace safety and form the basis of Ohio's public policy, which is "clearly in keeping with the laudable objectives of the federal Occupational Safety and Health Act." *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 152, 677 N.E.2d 308. See, also, *Pytlinski v. Brocar Products, Inc.* (2002), 94 Ohio St.3d 77, 79, 760 N.E.2d 385. Ohio's Fire Code includes rules relating to the installation, inspection, and location of fire-protection equipment. R.C. 3737.82; Ohio Adm.Code 1301:7-7-01 et seq. Further, there are federal laws relating to fire protection and employee alarm systems. Section 1910.164 and 1910.165, Title 29, C.F.R. Employers also are subject to inspections from local fire authorities. There is a clear public policy favoring workplace fire safety. Therefore, retaliation against employees who raise concerns relating to workplace fire safety contravenes a clear public policy.

■ {¶ 25} According to Dohme, the information he shared with the insurance inspector concerned whether or not the fire alarm system was inspected at the appropriate times. Dohme had a prior experience at Eurand when he was injured after a fire alarm malfunctioned. He also had reported prior fire safety concerns to a member of the Vandalia Fire Department. An employee who reports fire safety concerns to the employer's insurance inspector, regardless of the employee's intent in doing so, is protected from being fired solely for the sharing of the safety information.

■ {¶ 26} Eurand argues that Dohme's claim must fail because Dohme did not report the safety issue to a governmental employee. We do not agree. It is the retaliatory action of the employer that triggers an action for violation of the public policy favoring workplace safety. "The elements of the tort do not include a requirement that there be a complaint to a specific entity, only that the discharge by the employer be related to the public policy." (Citation omitted.) *Pytlinski*, 94 Ohio St.3d at 80, 760 N.E.2d 385, fn. 3.

{¶ 27} Furthermore, Eurand's argument ignores the fact that an insurer's requirements may function to avoid fire-safety defects. When such requirements are imposed, or higher premiums are the alternative, an employer such as Eurand is motivated to cure safety defects. The market thus plays a role different from that of government, which may issue citations, but perhaps more immediate and compelling. And making the insurer aware of defects through its representative furthers the public interest in effective fire-safety measures.

{¶ 28} Eurand cites *Branan v. Mac Tools*, Franklin App. No. 03AP–1096, 2004-Ohio-5574, 2004 WL 2361568, in support of the trial court's decision to grant summary judgment on the clarity element. In *Branan*, the fired employee filed a claim under the whistleblower statute (R.C. 4113.52) based on alleged false imprisonment that occurred during a meeting with supervisors involving the disclosure of the employer's confidential information. No workplace safety concerns were raised in *Branan*. Further, Dohme is not alleging a whistleblower claim. Therefore, *Branan* is inapposite.

■ {¶ 29} Eurand also argues that summary judgment was appropriate because Dohme cannot establish the jeopardy element. The trial court did not specifically address this element, but the trial court's discussion of the employee's self-interest in bringing a concern to the insurance inspector, according to Eurand, arguably implicates the jeopardy element. Because the jeopardy element concerns a question of law, we will address Eurand's argument. According to Eurand, Dohme cannot establish that the public policy favoring workplace safety is jeopardized by Dohme's discharge from employment. Eurand cites four cases in support of its argument. We find that all four of these cases are inapposite.

{¶ 30} In *Jermer v. Siemens Energy & Automation, Inc.* (C.A.6, 2005), 395 F.3d 655, 658, the plaintiff contacted his employer's ethics hotline to report his concerns that his employer's air-quality problems had not been addressed. Prior to this contact between the plaintiff and the employer's ethics hotline, the employer had decided to fire the plaintiff due to the plaintiff's prior conduct in the workplace. Unlike *Jermer*, Dohme was not fired for prior conduct, but rather was fired for his conversation with the insurance inspector contrary to Eurand's order to its employees. Of course, it is a question of fact for the jury

whether Eurand fired Dohme because he raised safety concerns with the inspector or for reasons unrelated to the safety concerns Dohme raised.

{¶ 31} *Jermer* also relied heavily on the fact that the plaintiff did not give his employer sufficient notice that he was raising a workplace-safety issue. According to *Jermer*, "The Ohio Supreme Court views employee complaints and whistleblowing as critical to the enforcement of the State's public policy, and the Court therefore intended to make employees de facto 'enforcers' of those policies. Toward this end, the Court granted them special protection from Ohio's generally applicable at-will employment status when the employees act in this public capacity. In exchange for granting employees this protection, employers must receive notice that they are no longer dealing solely with an at-will employee, but with someone who is vindicating a governmental policy. Employers receive clear notice of this fact when actual government regulators arrive to audit or inspect. They should receive some similar notice when an employee functions in a comparable role. Even though an employee need not cite any specific statute or law, his statements must indicate to a reasonable employer that he is invoking governmental policy in support of, or as the basis for, his complaints."

{¶ 32} We disagree with *Jermer*'s implication that an employee must make some formal announcement that his statements are being made for the purpose of protecting the public policy favoring workplace-safety. Employers are presumed to be sophisticated enough to comply with the workplace safety laws. When an employer directs employees to not speak to an insurance representative inspecting a premises, an implication arises that the employer wishes to cover up defects, including those that create a danger to employees. Supporting the employer's conduct endorses its efforts to conceal potential dangers. As *Jermer* recognized, the Supreme Court views employee complaints as critical to the enforcement of the state's public policy. We would be minimizing the importance of these complaints and the state's public policy were we to concentrate on the employee's intent in raising the safety concern rather than on whether the employee's complaints related to the public policy and whether the employer fired the employee for raising the concern.

{¶ 33} In *Aker v. New York & Co., Inc.* (N.D.Ohio 2005), 364 F.Supp.2d 661, the employer had an internal policy regarding shoplifting that was created to minimize the chance of confrontation and physical injury (i.e., to ensure workplace safety). The employee ignored the company's policy, which led to an altercation with suspected shoplifters. Id. at 664. Unlike Dohme, the employee did not allege that her termination resulted from a report about unsafe working conditions. Moreover, in *Aker*, the employee's actions actually undermined workplace safety. The same cannot be and has not been alleged regarding Dohme's actions in speaking with the insurance inspector.

{¶ 34} In *Mitchell v. Mid–Ohio Emergency Servs., L.L.C.*, Franklin App. No. 03AP–981, 2004-Ohio-5264, 2004 WL 2803419, a physician sent letters to a number of individuals regarding an incident at a hospital that raised issues regarding the quality of patient care. In these letters, the physician included confidential patient information, which violated his employer's policies and could have exposed his employer to liability for violating patient confidentiality. Id. at ¶ 7. The court was confronted with the employee's request to find a clear public policy that employers could not discharge employees who complain about patient care outside the quality-assurance chain. Id. at ¶ 19. This is far from Dohme's situation, which involves the more precise public policy relating to fire safety. *Kulch*, 78 Ohio St.3d at 152, 677 N.E.2d 308; *Pytlinski*, 94 Ohio St.3d at 79, 760 N.E.2d 385.

{¶ 35} Further, *Mitchell* held that the public policy identified in the statute at issue would be defeated if complaints were not kept confidential. Id., 2004-Ohio-5264, 2004 WL 2803419, at ¶ 23, fn. 5. Here, no argument can be made that the public policy favoring workplace safety would be defeated were employees allowed to express safety concerns to an employer's insurance inspector.

{¶ 36} Finally, Eurand cites *Herlik v. Continental Airlines, Inc.* (C.A.6, 2005), No. 04–3790, 2005 WL 2445947. In *Herlik*, a pilot was fired after he raised safety concerns with a co-pilot. The Sixth Circuit noted the Ohio Supreme Court's willingness to find a clear public policy from sources other than legislation, but then noted that the Supreme Court has not actually done so in practice. The Sixth Circuit then espoused a position that public policy prevents a firing only when there is a statute that prohibits firing employees for engaging in a particular protected activity. Id.

{¶ 37} *Herlik* misconstrues Ohio law on this issue. The Supreme Court has made it very clear that a public policy preventing termination of an employee may flow from sources other than a statute that specifically prohibits firing employees for engaging in a particular protected activity. "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." *Pytlinski*, 94 Ohio St.3d at 80, 760 N.E.2d 385. The cause of action is not based upon the whistleblower statute, but is, instead, based in common law for violation of public policy. Id.

{¶ 38} We do not suggest that Dohme will or should prevail on his claim of wrongful discharge. Rather, we conclude only that the trial court erred in finding that there was not a public policy that protects Dohme from being fired for sharing information with an insurance inspector that relates to workplace safety. In order to prevail on his claim, Dohme must carry his burden to prove the remaining elements of a wrongful-discharge claim.

{¶ 39} The assignment of error is sustained. The judgment of the trial court is reversed and the cause is remanded for further proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

BROGAN and DONOVAN, JJ., concur.