**DOHME, APPELLEE, *v.* EURAND AMERICA, INC., APPELLANT.**

**[Cite as *Dohme v. Eurand Am., Inc.,* 130 Ohio St.3d 168, 2011-Ohio-4609.]**

*To satisfy the clarity element of a claim of wrongful discharge in violation of public policy, a terminated employee must articulate a clear public policy by citation of specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law.*

(No. 2010-1621—Submitted June 7, 2011—Decided September 15, 2011.)

APPEAL from the Court of Appeals for Montgomery County, No. 23653,

189 Ohio App.3d 343, 2010-Ohio-3905.

_____

**SYLLABUS OF THE COURT**

To satisfy the clarity element of a claim of wrongful discharge in violation of public policy, a terminated employee must articulate a clear public policy by citation of specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law.

_____

**CUPP, J.**

{¶ 1} In this discretionary appeal, we consider the tort claim of wrongful discharge in violation of public policy. We conclude that the discharged employee, appellee, Randall J. Dohme, has not established that he meets the requirements that are necessary to maintain his claim for wrongful discharge in violation of public policy. Accordingly, we reverse the judgment of the appellate court.

**I. Facts and Procedure**

{¶ 2} Dohme began working for appellant, Eurand America, Inc., in 2001. He held two positions at Eurand America until the termination of his employment in March 2003. His first position was as engineering supervisor. In this position, Dohme was responsible for supervising the performance of engineering technicians and team leaders. Thereafter, Dohme was named the facilities administrator, and his job responsibilities included maintaining the plant fire-protection system. Dohme asserts that although his title or job description never changed, his duties with Eurand America during the last three months of his employment consisted of merely tracking the tools and parts used by the maintenance department.

{¶ 3} Eurand America fired Dohme in 2003. Dohme contends that Eurand America fired him because he had expressed concerns about the safety of the Eurand workplace to outside parties. One incident occurred in 2002 when Dohme discussed with his neighbor, a captain with the local fire department, the design of a pump, which Dohme believed had started a fire at the plant.

{¶ 4} Dohme asserts that in 2003 he also communicated his workplace-safety concerns to an insurance adjuster who conducted an on-site evaluation of Eurand America's facility to assess the building and its operations. Dohme contends that this particular communication to an outside party underlies his claim of wrongful termination in violation of public policy; i.e., he was terminated because of his "perceived role in an on-site insurance adjuster's discovery of certain violations relative to [Eurand America's] fire alarm system, which * * * jeopardized workplace safety and placed employees in [an] unreasonable and dangerous setting."

{¶ 5} For its part, Eurand America states that it terminated Dohme for insubordination. Eurand America states that prior to the insurance adjuster's visit, it sent an interoffice e-mail to all its employees. This interoffice e-mail explained

that the facility would be inspected by the adjuster and that only certain employees of Eurand America, who were identified by Eurand America in that e-mail, were to have contact with the adjuster. Dohme was not identified in the interoffice e-mail as one of the employees who would be speaking with the adjuster.

{¶ 6} Dohme spoke with the adjuster nevertheless. Dohme told the adjuster that he could not locate an internal monthly report detailing overdue fire-alarm inspections. Dohme stated to the adjuster that "he might want to find out what happened with that [fire] inspection [that was removed from the computer system]." Dohme believed that someone at Eurand America purposefully made the fire inspection report disappear and someone was "trying to make it look like" Dohme was not doing his job, even though he had been told to concentrate on the location and labeling of spare parts. Dohme stated that his interaction with the adjuster took place despite, as characterized by Dohme, Eurand America's active attempts to "prevent employee communication with said adjuster pursuant to an interoffice email sent by management personnel to all employees, including [Dohme], days prior to the adjuster's arrival, which expressly prohibited communication with said adjuster." It was Dohme's plain disregard of this express directive from Eurand America that resulted in the allegation of insubordination.

{¶ 7} The trial court granted summary judgment to Eurand America on Dohme's claim of wrongful discharge in violation of public policy. The trial court based its decision on Dohme's failure to articulate a specific clear public policy that was jeopardized by his termination.

{¶ 8} The appellate court reversed. *Dohme v. Eurand Am., Inc.*, 170 Ohio App.3d 593, 2007-Ohio-865, 868 N.E.2d 701, ¶ 39. The court concluded that because there was a clear public policy generally favoring fire safety in the workplace, retaliation against employees who raise concerns over fire safety

violates public policy.  The court found irrelevant Dohme's motive for reporting the safety concerns.  The appellate court also concluded that the public policy favoring workplace fire safety was jeopardized by Dohme's discharge, id. at ¶ 24, contrary to the trial court's ruling that the issue was moot because Dohme failed to articulate a specific public policy.

{¶ 9} Eurand America appealed, and we first accepted jurisdiction in 2007.  114 Ohio St.3d 1424, 2007-Ohio-2904, 868 N.E.2d 679.  The propositions of law we accepted addressed the clarity and the jeopardy elements of the tort of wrongful discharge in violation of public policy.  Id.; 119 Ohio St.3d 1471, 2008-Ohio-4911, 894 N.E.2d 331.  However, prior to issuing an opinion in that appeal, we discovered that there was no final, appealable order by the trial court, which is a prerequisite for appellate court jurisdiction over an appeal.  Consequently, we vacated the judgment of the court of appeals and remanded the cause to the trial court for further proceedings.  121 Ohio St.3d 277, 2009-Ohio-506, 903 N.E.2d 1174.

{¶ 10} On remand, a final, appealable order was issued by the trial court, and the case was again appealed to the Second District Court of Appeals.  The appellate court adopted its prior decision in favor of Dohme in its entirety.  189 Ohio App.3d 343, 2010-Ohio-3905, 938 N.E.2d 417, ¶ 8.  Eurand America appealed, and we again accepted jurisdiction over the same propositions of law. 127 Ohio St.3d 1502, 2011-Ohio-19, 939 N.E.2d 1266.

## II. Analysis: Wrongful Discharge in Violation of Public Policy

{¶ 11} In Ohio, the common-law doctrine of employment at will governs employment relationships.  The act of terminating an at-will employee's relationship with an employer usually does not give rise to an action for damages. *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 67, 652 N.E.2d 653; *Mers v. Dispatch Printing Co*. (1985), 19 Ohio St.3d 100, 19 OBR 261, 483 N.E.2d 150, paragraph one of the syllabus.  However, if an employee is discharged or

disciplined in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law, a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus; *Greeley v. Miami Valley Maintenance Contrs., Inc*. (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, paragraph one of the syllabus.

{¶ 12} The elements of a claim of wrongful discharge in violation of public policy are as follows:

{¶ 13} " '1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).

{¶ 14} " '2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).

{¶ 15} " '3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).

{¶ 16} " '4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).' " (Emphasis sic.) *Painter*, 70 Ohio St.3d at 384, 639 N.E.2d 51, fn. 8, quoting Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self-Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399. See also *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, ¶ 8-12.

{¶ 17} The clarity and jeopardy elements of the *Painter* test are issues of law for the court's determination; the causation and overriding-justification elements are questions for determination by the fact-finder. *Collins*, 73 Ohio St.3d at 70, 652 N.E.2d 653.

**{¶ 18}** In an action claiming wrongful termination, the terminated employee must assert and prove a clear public policy deriving from the state or federal constitutions, a statute or administrative regulation, or the common law. *Leininger*, 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, ¶ 16. See also id. at ¶ 9, quoting *Painter*, 70 Ohio St.3d at 384, 639 N.E.2d 51, fn.8, quoting Perritt, 58 U.Cin.L.Rev. at 398-399; *Sutton v. Tomco Machining, Inc.,* 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 11 (identifying R.C. 4123.90 as the source of Ohio's public policy against retaliatory employment actions after an injury on the job). "Clear public policies" have been recognized in a variety of circumstances. Cf. 2 Perritt, Employee Dismissal Law and Practice (5th Ed.2006) 7-32 to 7-32.8, Section 7.05[A] (listing public policies asserted by plaintiffs in other jurisdictions to support a claim of wrongful discharge in violation of public policy, including assisting investigations, permitting Occupational Safety and Health Administration ("OSHA") complaints, ensuring public safety, and eliminating unsafe working conditions). Other states have similarly required that the clear public policy supporting the wrongful-discharge claim must be plainly manifested within a state or federal constitution, statute or administrative regulations, or in the common law and that the plaintiff must identify the specific expression of public policy. See, e.g., *Turner v. Mem. Med. Ctr.* (2009), 233 Ill.2d 494, 502-503, 331 Ill.Dec. 548, 911 N.E.2d 369; *Gardner v. Loomis Armored Inc.* (1996), 128 Wash.2d 931, 941, 913 P.2d 377; *Birthisel v. Tri-Cities Health Servs. Corp.* (1992), 188 W.Va. 371, 377, 424 S.E.2d 606.

**{¶ 19}** In this case, we conclude, as did the trial court, that Dohme failed to meet his requisite burden to articulate, by citation of its source, a specific public policy that Eurand America violated when it discharged him. Dohme's complaint simply alleged that Eurand America's actions "jeopardized workplace safety." Eurand America asserted in its motion for summary judgment that Dohme has not identified a public policy applicable to the incident. Dohme, the

nonmoving party, then had the reciprocal burden of articulating, by citation of its source, a specific clear public policy. See *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus ("A party seeking summary judgment must specifically delineate the basis upon which summary judgment is sought in order to allow the opposing party a meaningful opportunity to respond").

{¶ 20} In Dohme's materials opposing summary judgment, he recited syllabus language from *Pytlinski v. Brocar Prods., Inc.* (2002), 94 Ohio St.3d 77, 760 N.E.2d 385: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted." Although Dohme contended that under *Pytlinski*, no further articulation, by citation of its source, of a clear public policy was required, he additionally cited the plurality opinion of *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 152, 677 N.E.2d 308, which cites several statutes outlining an employer's general duty to provide a safe workplace.

{¶ 21} As the nonmovant, Dohme must show that the issue to be tried is genuine and may not rely merely upon the pleadings or upon unsupported allegations. *Shaw v. J. Pollock & Co.* (1992), 82 Ohio App.3d 656, 659, 612 N.E.2d 1295. The mere citation of the syllabus in *Pytlinski* is insufficient to meet the burden of articulating a clear public policy of workplace safety. Further, Dohme only generally mentioned or identified any legal basis for a statewide policy for workplace health and safety. Dohme did not cite any specific statement of law in support of his claim of public policy that was drawn from the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law. In contrast, the *Pytlinski* and *Kulch* plaintiffs both alleged that their respective employers had violated federal OSHA regulations. *Pytlinski*, 94 Ohio St.3d at 78, 760 N.E.2d 385 (the terminated employee alleged that he had delivered a memorandum to his employer detailing the violations of OSHA regulations that were occurring at the workplace); *Kulch*, 78 Ohio St.3d at 135,

677 N.E.2d 308 (the terminated employee alleged that after his verbal complaints of the health violations within the workplace were rebuffed by the employer, he had filed a written report with OSHA, which resulted in an on-site inspection and OSHA finding several violations of its standards). Thus, Dohme failed to establish the existence of a clear public policy applicable to him in this matter. Cf. *Lesko v. Riverside Methodist Hosp.*, 10th Dist. No. 04AP-1130, 2005-Ohio-3142, ¶ 35.

{¶ 22} Similarly unavailing is Dohme's reliance on the appellate court's sua sponte articulation of a public policy favoring workplace fire safety, which was supported by citation of various state and federal statutes and regulations. *Dohme v. Eurand Am., Inc.,* 170 Ohio App.3d 593, 2007-Ohio-865, 868 N.E.2d 701, ¶ 24. As the plaintiff, Dohme has the obligation to specify the sources of law that support the public policy he relies upon in his claim. Because Dohme did not back up his assertion of a public policy of workplace safety in his summary-judgment documents with specific sources of law, he has not articulated the clarity element with specificity.

{¶ 23} Unless the plaintiff asserts a public policy and identifies federal or state constitutional provisions, statutes, regulations, or common law that support the policy, a court may not presume to sua sponte identify the source of that policy. There may be valid reasons for a plaintiff's failure to identify and assert a specific public policy or a specific source for that public policy. An appellate court may not fill in the blanks on its own motion.

{¶ 24} Based on the foregoing, we conclude that to satisfy the clarity element of a claim of wrongful discharge in violation of public policy, a terminated employee must articulate a clear public policy by citation of specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law. A general reference to workplace safety is insufficient to meet the clarity requirement. Dohme has not

asserted or proven for the purposes of satisfying the clarity element the existence of a clear Ohio public policy supported by specific citations so as to overcome a motion for summary judgment.

**{¶ 25}** Dohme has failed to establish that his discharge was in contravention of a clear public policy articulated in the Ohio or United States Constitution, federal or state statutes, administrative rules and regulations, or common law, and his action must fail because establishment of the clarify element is essential to the survival of his remaining claims. Because Dohme's claim of wrongful discharge in violation of public policy fails for lack of proof of a specific clear public policy, Eurand America is entitled to summary judgment in its favor.

**{¶ 26}** Although Eurand America has asserted two additional propositions of law in this appeal, we do not reach those issues, because our determination on the proposition of law involving the clarity element has fully resolved this matter. Because the court does not need to reach the issue of whether Eurand America's termination of Dohme jeopardized a public policy, we decline to do so. See *Meyer v. United Parcel Serv., Inc.,* 122 Ohio St.3d 104, 2009-Ohio-2463, 909 N.E.2d 106, ¶ 53; *PDK Laboratories, Inc. v. United States Drug Enforcement Administration* (C.A.D.C.2004), 362 F.3d 786, 799 (Roberts, J., concurring in part and concurring in judgment) ("if it is not necessary to decide more, it is necessary not to decide more").

**{¶ 27}** It is well settled that this court does not issue advisory opinions. *State ex rel. White v. Kilbane Koch*, 96 Ohio St.3d 395, 2002-Ohio-4848, 775 N.E.2d 508, ¶ 18, citing *State ex rel. Baldzicki v. Cuyahoga Cty. Bd. of Elections* (2000), 90 Ohio St.3d 238, 242, 736 N.E.2d 893 and *Egan v. Natl. Distillers & Chem. Corp.* (1986), 25 Ohio St.3d 176, 25 OBR 243, 495 N.E.2d 904, syllabus. Accordingly, we dismiss, sua sponte, the propositions of law concerning the

jeopardy element of the claim of wrongful discharge in violation of public policy as having been improvidently accepted.

### III.  Conclusion

{¶ 28} In sum, Dohme has not articulated a clear public policy applicable to his claim of wrongful discharge in violation of public policy.  Because Dohme failed to establish the clarity element of his claim, the appellate court erred in reversing the trial court's grant of summary judgment to Eurand America. Accordingly, the judgment of the court of appeals is hereby reversed.

Judgment reversed.

O'CONNOR, C.J., and LUNDBERG STRATTON, O'DONNELL, LANZINGER, and McGEE BROWN, JJ., concur.

PFEIFER, J., concurs in judgment only.

_____

Duwel Law, David M. Duwel, and Todd T. Duwel, for appellee.

Scheuer Mackin Breslin, L.L.C., and Todd D. Penney, for appellant.

Bricker & Eckler, L.L.P., Donald R. Keller, and Vladimir P. Belo, urging reversal for amicus curiae, Ohio Management Lawyers Association.

_____