[Cite as *Colby Burns v. Ohio State Univ. College of Veterinary Med.*, 2014-Ohio-1190.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

Colby Burns, :

    Plaintiff-Appellant, :

                         No. 13AP-633

v. : (Ct.Cl. No. 2012-08800)

The Ohio State University : (REGULAR CALENDAR)
College of Veterinary Medicine,

                              :

    Defendant-Appellee. :

                              :

D E C I S I O N

Rendered on March 25, 2014

*Kemp, Schaeffer & Rowe Co., LPA,* and *Erica Ann Probst.*

*Michael DeWine*, Attorney General, *Randall W. Knutti* and *Amy S. Brown*, for appellee.

APPEAL from the Court of Claims of Ohio

DORRIAN, J.

{¶ 1} Plaintiff-appellant, Colby Burns ("appellant"), appeals from a judgment of the Court of Claims of Ohio dismissing her complaint against defendant-appellee, The Ohio State University College of Veterinary Medicine ("College of Veterinary Medicine"). For the reasons that follow, we affirm.

{¶ 2} Appellant was a resident of veterinary clinical sciences at the College of Veterinary Medicine under the instruction of Dr. Stephen Birchard, an associate professor of veterinary clinical sciences. Appellant asserts that, during the summer of 2008, Dr. Birchard learned that appellant is a homosexual and subsequently began treating her differently than other students. Appellant alleges that Dr. Birchard excluded her from social activities involving other residents and faculty, changed her percentage of effort on

a research grant without her knowledge, denied her assistance from other residents, and made comments and jokes of a vulgar and sexual nature. Appellant claims that these incidents often occurred in front of her peers, which resulted in humiliation and embarrassment. Appellant further claims that Dr. Birchard contacted or communicated with prospective employers, resulting in the cancellation of job interviews, and that Dr. Birchard refused to provide a reference to a potential employer. Appellant asserts that she reported this conduct to the College of Veterinary Medicine, which resulted in an investigation, but that the conduct continued during and after the investigation.

{¶ 3} Appellant filed an action in the Court of Claims of Ohio asserting claims of sex discrimination, sexual harassment, retaliation, and violation of public policy. The College of Veterinary Medicine moved to dismiss the complaint pursuant to Civ.R. 12(B)(1) and (6).[1] The trial court granted the motion to dismiss, concluding that appellant's claims were insufficient as a matter of law.

{¶ 4} Appellant appeals from the trial court's judgment, assigning two errors for this court's review:

> I. The trial court committed error as a matter of law when it dismissed Plaintiff's Complaint for failure to state a claim because sexual orientation discrimination is covered by Title 4112 of the Ohio Revised Code.
>
> II. The trial court committed error as a matter of law when it dismissed Plaintiff's Complaint for failure to state a sufficiently clear Ohio public policy which protects her from harassment or discipline or loss of grants as a result of her participation and/or report of inappropriate conduct of her superiors with regard to her homosexuality and his sexual relationship with another student.

{¶ 5} We review de novo a trial court's dismissal of a complaint for failure to state a claim upon which relief can be granted pursuant to Civ.R. 12(B)(6). *Modern Office Methods, Inc. v. Ohio State Univ.*, 10th Dist. No. 11AP-1012, 2012-Ohio-3587, ¶ 9. "Dismissal for failure to state a claim upon which relief can be granted is proper if, after all factual allegations are presumed to be true and all reasonable inferences are made in

---

[1] The College of Veterinary Medicine also asserted that appellant's claims were barred under the applicable statute of limitations. The Court of Claims did not address this argument in its judgment; therefore, we do not address the statute of limitations in this decision.

favor of the non-moving party, it appears beyond doubt from the complaint that the plaintiff could prove no set of facts warranting the requested relief." *Id.*

{¶ 6}   In her first assignment of error, appellant asserts that the trial court erred by dismissing her claims for sex discrimination, sexual harassment, and retaliation. Under Ohio law, an employer may not discharge without just cause, refuse to hire or otherwise discriminate against an individual with respect to hire, tenure, terms, conditions or privileges of employment "because of the race, color, religion, sex, military status, national origin, disability, age, or ancestry" of that person. R.C. 4112.02(A). A plaintiff may establish discrimination because of sex by an employer, in violation of R.C. 4112.02(A), by establishing "quid pro quo" harassment or "hostile environment" harassment. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169 (2000), paragraph one of the syllabus; *Hoyt v. Nationwide Mut. Ins. Co.*, 10th Dist. No. 04AP-941, 2005-Ohio-6367, ¶ 74. Quid pro quo harassment is linked to the grant or denial of a tangible economic benefit and occurs when an employee's submission to or rejection of unwelcome sexual conduct is used as the basis for an employment decision. *Hoyt* at ¶ 74. Appellant does not allege that she was subject to quid pro quo harassment; instead, the allegations in her complaint relate to the creation of a hostile work environment. "In order to establish a claim of hostile-environment sexual harassment, the plaintiff must show (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the 'terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment,' and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action." *Hampel* at paragraph two of the syllabus.

{¶ 7}   Taking the factual assertions of appellant's complaint as true, the alleged conduct in this case was repugnant. The crux of this appeal, however, is whether the conduct was actionable under R.C. 4112.02(A) as discrimination "because of sex." Appellant does not claim that she was subject to discrimination or harassment because she was a woman; rather, appellant claims that the alleged discrimination and harassment occurred because of her sexual orientation. Citing the Supreme Court of

Ohio's decision in *Hampel*, appellant argues that the word "sex" in R.C. 4112.02(A) is not limited to gender and also protects against discrimination based on sexual orientation.

{¶ 8}   Without pointing to supporting authority, appellant claims that the basis of sexual harassment is not gender, but rather sexual gratification and attraction. The Supreme Court of Ohio, however, has said the opposite. In *Hampel*, the court held that " 'harassing conduct need not be motivated by sexual desire to support an inference of discrimination on the basis of sex.' " *Hampel* at 178, quoting *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). Rather, " 'any harassment or other unequal treatment of an employee or group of employees that would not occur *but for the sex* of the employee or employees may, if sufficiently patterned or pervasive, comprise an illegal condition of employment.' " (Emphasis added.) *Id.* at 179, quoting *McKinney v. Dole*, 765 F.2d 1129, 1138 (D.C.Cir.1985). The court further held that "harassing conduct that is simply abusive, with no sexual element, can support a claim for hostile-environment sexual harassment if it is directed at the plaintiff *because of his or her sex*." (Emphasis added.) *Id.* at 180.

{¶ 9}   In support of her argument that the term "sex" in R.C. 4112.02(A) should include sexual orientation, appellant points us instead to the *Hampel* decision's reference to Professor Larson's statement that "the term 'sexual,' *as used to modify harassment*, 'can refer to both sex as the immutable gender characteristic and to sex as describing a range of behaviors associated with libidinal gratification.' " (Emphasis added.) *Hampel* at 178, quoting 3 Larson, *Employment Discrimination*, Section 46.03[4], at 46-34 (2 Ed.2000). From this, appellant concludes that harassment based on sexual orientation is also covered by the use of the term "sex" in R.C. 4112.02(A).

{¶ 10} We disagree with appellant's interpretation of the holding in *Hampel*, as well as her interpretation of Professor Larson's statement. Professor Larson very clearly stated that his analysis pertained to the term "sexual," as used to modify harassment. Thus, harassment is the action that is prohibited. The action is distinguished from the class to be protected, which is defined by sex. Professor Larson does not suggest that the protected class be modified to include persons with the immutable gender characteristic as well as persons with a range of behaviors associated with libidinal gratification. Rather, he suggests, and the Supreme Court of Ohio has held, that the act of harassing can

address the immutable gender characteristic and/or behaviors associated with libidinal gratification. On the basis of *Hampel*, we cannot conclude that the term "sex" under R.C. 4112.02(A) encompasses sexual orientation.[2]

{¶ 11} Accordingly, we overrule appellant's first assignment of error.

{¶ 12} In her second assignment of error, appellant asserts that the trial court erred by dismissing her complaint for failure to state a sufficiently clear public policy. The Supreme Court of Ohio has adopted a four-part test for a termination in violation of public policy. *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, ¶ 9-13. The first element of the test requires a plaintiff to demonstrate that a clear public policy existed as manifested in a state or federal constitution, statute, or administrative regulation, or in the common law. *Id.* at ¶ 9. The clarity element is a question of law to be determined by the court. *Id.* at ¶ 13.

{¶ 13} Appellant refers to R.C. Chapter 4112 and Title VII as demonstrating a public policy prohibiting discrimination based on sexual orientation; however, as explained above, courts have held that these statutory provisions do not apply to sexual orientation. Appellant also points to the Columbus City Codes, but, as she conceded in oral argument, this does not demonstrate a clear statewide or federal public policy. *See Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, ¶ 21 ("Further, Dohme only generally mentioned or identified any legal basis for a *statewide* policy for workplace health and safety.") (Emphasis added); *Giannini-Baur* at ¶ 28 ("[T]he clarity of public policy must be established at the state, as opposed to local, level."). Finally, appellant cites the Fifth and Fourteenth Amendments to the U.S. Constitution, but these broad references fail to demonstrate a clear public policy in support of appellant's claim. *See Dohme* at ¶ 21 ("Dohme did not cite any *specific* statement of law in support of his claim of public policy that was drawn from the federal or state constitution, federal or state

---

[2] Each appellate district in this state that has considered such a claim has concluded that the term "sex" in R.C. 4112.02(A) does not include sexual orientation. *See Inskeep v. W. Reserve Transit Auth.*, 7th Dist. No. 12 MA 72, 2013-Ohio-897, ¶ 23; *Giannini-Baur v. Schwab Retirement Plan Servs., Inc.*, 9th Dist. No. 25172, 2010-Ohio-6453, ¶ 18; *Tenney v. General Elec. Co.*, 11th Dist. No. 2001-T-0035, 2002-Ohio-2975, ¶ 17; *Retterer v. Whirlpool Corp.*, 111 Ohio App.3d 847, 859 (3d Dist.1996), abrogated on other grounds by *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455; *Greenwood v. Taft, Stettinius & Hollister*, 105 Ohio App.3d 295, 298-99 (1st Dist.1995). Likewise, courts analyzing the analogous provision of Title VII have held that, for purposes of that law, "sex" does not include sexual orientation. *See Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 762 (6th Cir.2006) ("[S]exual orientation is not a prohibited basis for discriminatory acts under Title VII.").

statutes, administrative rules and regulations, or common law.") (Emphasis added). Absent a clear public policy supporting her claim, appellant has failed to state a claim upon which relief can be granted.

{¶ 14} Accordingly, we overrule appellant's second assignment of error.

{¶ 15} In this appeal, appellant unabashedly argues for a change in the law. However, this claim and this court are not the forum for achieving the change that appellant seeks. In recent years, state and federal courts have increasingly concluded that laws treating individuals differently based on sexual orientation violate principles of equal protection and due process of law.[3] Appellant does not assert equal protection or due process claims in this case, and the Court of Claims would have lacked jurisdiction over such claims had she raised them. *See Hamilton v. Ohio Dept. of Rehab. & Corr.*, 10th Dist. No. 06AP-916, 2007-Ohio-1173, ¶ 14. Legislative measures proposing to amend R.C. Chapter 4112 and Title VII to add the term "sexual orientation" have been, as yet,

---

[3] *See, e.g., U.S. v. Windsor*, ___ U.S. ___, 133 S.Ct. 2675, 2693 (2013) ("DOMA seeks to injure the very class New York seeks to protect. By doing so it violates basic due process and equal protection principles applicable to the Federal Government."); *Lawrence v. Texas*, 539 U.S. 558, 578 (2003) ("The petitioners are entitled to respect for their private lives. The State cannot demean their existence or control their destiny by making their private sexual conduct a crime. Their right to liberty under the Due Process Clause gives them the full right to engage in their conduct without intervention of the government."); *Obergefell v. Wymyslo*, S.D.Ohio No. 1:13-cv-501, ___ F. Supp.2d ___ (Dec. 23, 2013) (holding that "Ohio's refusal to recognize same-sex marriages performed in other states violates the substantive due process rights of the parties to those marriages because it deprives them of their significant liberty interest in remaining married absent a sufficient articulated state interest for doing so or *any* due process procedural protection whatsoever" and that "[b]ecause *there is no rational connection between Ohio's marriage recognition bans and the asserted state interests*, this Court can conclude that the ban violates equal protection even without considering whether it is motivated by an impermissible purpose") (emphasis sic); *Varnum v. Brien*, 763 N.W.2d 862, 906 (Iowa 2009) (holding that Iowa's marriage statute "denies gay and lesbian people the equal protection of the law promised by the Iowa Constitution"); *Kerrigan v. Commr. of Pub. Health*, 289 Conn. 135, 260 (2008) ("Accordingly, under the equal protection provisions of the [Connecticut] constitution, [Connecticut's] statutory scheme governing marriage cannot stand insofar as it bars same sex couples from marrying."); *Lewis v. Harris*, 188 N.J. 415, 457 (2006) ("We now hold that under the equal protection guarantee of Article I, Paragraph 1 of the New Jersey Constitution, committed same-sex couples must be afforded on equal terms the same rights and benefits enjoyed by married opposite-sex couples."); *Snetsinger v. Montana Univ. Sys.*, 325 Mont. 148, 157 (2004) ("[T]he University System's policy of denying health benefits to unmarried same-sex couples while granting the benefits to unmarried opposite-sex couples results in a denial of equal protection."); *Goodridge v. Dept. of Pub. Health*, 440 Mass. 309, 342 (2003) ("Limiting the protections, benefits, and obligations of civil marriage to opposite-sex couples violates the basic premises of individual liberty and equality under law protected by the Massachusetts Constitution."); *Kentucky v. Wasson*, 842 S.W.2d 487, 501 (Ky. 1992) ("Our protection against exercise of 'arbitrary power over the * * * liberty * * * of freemen' by the General Assembly (Section Two [of the Kentucky Constitution]) and our guarantee that all persons are entitled to 'equal' treatment (in Section Three [of the Kentucky Constitution]) forbid a special act punishing the sexual preference of homosexuals.").

unsuccessful.[4] *See, e.g.,* S.B. No. 125, 130th Gen. Assembly (2013-2014); H.B. No. 163, 130th Gen. Assembly (2013-2014); Employment Non-Discrimination Act of 2013, S. 815, 113th Congress (2013-2014). Under our system of separation of powers, this court's role is limited to interpreting and applying R.C. Chapter 4112 as it currently exists. *See Skilton v. Perry Loc. School Dist. Bd. of Edn.*, 102 Ohio St.3d 173, 2004-Ohio-2239, ¶ 14 ("It is not the role of the courts to question the public policy values of a legislatively enacted scheme. We are limited to applying the statutes as written and passing on the constitutionality thereof.").

{¶ 16} For these reasons, we find, therefore, that the trial court did not err by dismissing appellant's complaint for failure to state a claim upon which relief could be granted.

{¶ 17} For the foregoing reasons, we overrule appellant's two assignments of error and affirm the judgment of the Court of Claims of Ohio.

*Judgment affirmed.*

BROWN and O'GRADY, JJ., concur.

———————————————

[4] Legislation proposing to amend R.C. Chapter 4112 by adding the term "sexual orientation" has been introduced in each General Assembly session from at least 2003 to the present, without gaining passage. Likewise, versions of the federal Employment Non-Discrimination Act, which would amend Title VII to add the term "sexual orientation," have been introduced in each session of Congress since 1994, without gaining passage.