[Cite as *Shields v. Tyack*, 2015-Ohio-5369.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| John Shields, | : | |
| Plaintiff-Appellant, | : | |
| | : | No. 15AP-114 |
| v. | : | (C.P.C. No. 14CV-1112) |
| Lori Tyack, | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 22, 2015

*Daniel H. Klos*, for appellant.

*Richard C. Pfeiffer, Jr.*, City Attorney, and *Pamela J. Gordon*, for appellee.

APPEAL from the Franklin County Court of Common Pleas

BRUNNER, J.

{¶ 1} Plaintiff-appellant, John Shields, appeals from a final judgment of the Franklin County Court of Common Pleas that granted summary judgment to defendant-appellee, the Franklin County Municipal Court Clerk, Lori Tyack, on Shields' claim for wrongful termination in violation of public policy through the court-created public policy tort. We conclude that Shields did not demonstrate a genuine issue of fact as to whether dismissing employees under circumstances like those involved in his dismissal would place a clear public policy in jeopardy. We affirm the judgment of the trial court, albeit on the different reasoning stated herein.

I. FACTS AND PROCEDURAL HISTORY

{¶ 2} On January 24, 2013, Shields was an employee of the Franklin County Municipal Clerk's Office. In that capacity, he gave Andy Callif, a bail bond company representative, copies of two documents produced by the internal office computer system,

which included unredacted telephone and social security numbers of persons accused of crimes as contained in the records of the Franklin County Municipal Court. Upon observing this transaction, another bail bond company representative, John Handler, requested copies of the same documents, and Shields complied.

{¶ 3} The next day, January 25, 2013,[1] Handler and another bail bond company representative, John Fox, met with Tyack. In that meeting, Handler and Fox did not identify Shields, but voiced concerns that the documents Handler had seen Shields provide to Callif were giving Callif an unfair advantage in obtaining clients. Specifically, the documents contained phone numbers. Though the phone numbers were public records, phone numbers were not typically included on slate sheets commonly provided to bail bond company representatives. Tyack had two concerns following this meeting. First, notwithstanding the fact that the clerk in question had provided the documents to both bail bond company representatives who requested them, Tyack was concerned that the act of distributing this material (which contained phone numbers) might give a competitive advantage to one bonding company over another, which could be perceived as favoritism. Second, Tyack was concerned that the social security numbers were not redacted from the documents.

{¶ 4} Tyack assigned one of her employees, Obie Lucas, to look into the matter. Lucas investigated and told Tyack that Shields was the clerk who had distributed these documents and that it appeared Shields was giving preferential treatment to Callif by conducting research for him. Lucas opined that if Shields knowingly released unredacted documents and was providing preferential treatment, he should be terminated. Tyack agreed.

{¶ 5} On January 29, 2013, Lucas and the director of human resources met with Shields and gave him the option to resign or be terminated. Given only a few minutes to make the decision, and fearing that he could lose his pension if he were fired, Shields resigned.

{¶ 6} Just over one year later, on January 31, 2014, Shields filed a complaint against Tyack and Handler in the Franklin County Court of Common Pleas. On

---

[1] In an apparent typographical error, Lori Tyack's affidavit refers to this date as January 15, 2013.

November 7, 2014, Tyack moved for summary judgment on the claims against her. On December 5, 2014, Shields dismissed his claims against Handler with prejudice. On December 8, 2014, Shields responded to Tyack's motion for summary judgment and gave notice that he was abandoning all claims against Tyack except for one, a claim that he was wrongfully terminated in violation of public policy. Tyack replied in support of summary judgment on December 11, 2014, and Shields attempted to file a sur-reply on December 23, 2014.

{¶ 7} On January 21, 2015, the trial court refused to consider the sur-reply and granted summary judgment to Tyack. Shields now appeals.

## II. ASSIGNMENTS OF ERROR

{¶ 8} Shields advances two assignments of error for our review:

> 1. The Trial Court misapplied *Painter v. Graley*, 1994-Ohio-334, 70 Ohio St.3d 377, 639 N.E.2d 51 (Ohio 1994).

> 2. The Trial Court erred when it concluded that because none of the constitutional rights of the Appellant were violated that Plaintiff had no public policy tort claim.

Because these assignments of error are interrelated we address them together.

## III. DISCUSSION

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Civ.R. 56(C). In deciding whether to grant or deny a motion for summary judgment, a court must utilize this standard, giving the non-moving party "the benefit of all favorable inferences when evidence is reviewed for the existence of genuine issues of material facts." *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, ¶ 25. When reviewing a trial court's decision on summary judgment, our review is de novo. *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818, ¶ 12.

{¶ 9} Shields' employment relationship was at will. *See* R.C. 1901.31(H) (granting authority to the clerk to appoint deputy clerks); R.C. 3.06(A) (stating that a deputy "holds the appointment only during the pleasure of the officer appointing him [or her]").

Nevertheless, even an "at will" employee can bring a wrongful termination claim if his or her termination places a clear public policy in jeopardy. The Supreme Court of Ohio has set forth the elements for demonstrating wrongful discharge in violation of public policy, as follows:

> " '1. That clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element).
>
> " '2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element).
>
> " '3. The plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element).
>
> " '4. The employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element).' "

(Emphasis sic.) *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, ¶ 13-16, quoting *Painter v. Graley*, 70 Ohio St.3d 377, 384 (1994), fn. 8, quoting Perritt, *The Future of Wrongful Dismissal Claims: Where Does Employer Self-Interest Lie?*, 58 U.Cin.L.Rev. 397, 398-99 (1989), citing *Leininger v. Pioneer Natl. Latex*, 115 Ohio St.3d 311, 2007-Ohio-4921, ¶ 8-12. As the jeopardy element is dispositive, we discuss that first.

{¶ 10} Shields argued before the trial court that, under Rules 44 and 45 of the Rules of Superintendence for the Courts of Ohio, the telephone numbers he provided to Callif and Handler were a matter of public record. He has also made a policy argument for the proposition that, in some circumstances (for instance when pursuing an absconder), a bail bond company or its representative(s) might need to obtain an individual's social security number. At oral argument, Shields' attorney also suggested that social security numbers might be useful to a bail bond company for the purpose of ascertaining credit-worthiness in order to determine whether a bond should be written. However, these arguments lose sight of the facts in this case, and Shields' attempt to weave the Eighth Amendment right to bail into such arguments does not revitalize them.

{¶ 11} It is apparent from the record that Callif and Handler asked for information from Shields as part of a business practice aimed at obtaining new clients. In other words, the information the bail bond companies sought and received was related to gaining a

competitive edge over other companies—not to pursuing an absconder or ensuring anyone's right to a reasonable bail. In addition, although Shields made the argument that a social security number may make it easier to determine the credit-worthiness of a potential customer, there is no reason a potential recipient of a bond could not voluntarily give his or her social security number—or telephone number for that matter—to the bail bond company at the time underwriting was requested. The evidence, in short, shows no dispute that the disclosures in question were sought by bail bond representatives to obtain information for business acquisition purposes. We find nothing in the record to support that anyone was being denied reasonable bail because Tyack's office was not disclosing telephone and/or social security numbers or that dismissing employees like Shields for providing such information would place the right to bail or any clear public policy in jeopardy. In other words, we cannot perceive "jeopardy" to a "clear public policy" in "dismissing employees under circumstances like those involved" here. *Dohme* at ¶ 14.

{¶ 12} Shields has made various arguments regarding his perception of Tyack's views on bail bond companies and their representatives' purported actions that we find irrelevant. Shields also submitted evidence to the trial court that sometimes Tyack's policy was not followed by every employee in redacting documents before allowing them to be disseminated to the public. These concerns do not form a basis for concluding that dismissals like Shields' would place a clear public policy in jeopardy.

{¶ 13} In short, Shields' statutory "at will" status is dispositive of his claim. We find that dismissing employees under circumstances like those involved in Shields' firing would not place a constitutionally based "clear public policy" in jeopardy. Tyack could have terminated Shields for any reason or no reason, because Shields held his job "only during the pleasure of the officer appointing him." R.C. 3.06(A). There is no material issue of disputed fact here. Tyack was and is entitled to judgment as a matter of law. Shields' two assignments of error are overruled.

## IV. CONCLUSION

{¶ 14} We find that the undisputed facts show that dismissals of employees under circumstances like those confronted in Shields' situation do not place a clear public policy in jeopardy. We therefore overrule Shields' two assignment of error and affirm the

resulting judgment reached by the Franklin County Court of Common Pleas, albeit for different reasons as expressed in this decision.

*Judgment affirmed.*

SADLER and DORRIAN, JJ., concur.

————————————