[Cite as *Blackburn v. Am. Dental Ctrs.*, 2014-Ohio-5329.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Barbara Blackburn et al., | : | |
| Plaintiffs-Appellants, | : | No. 13AP-619 |
| | | (C.P.C. No. 08CVH-01-230) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| American Dental Centers, | : | |
| Dr. Sam Jaffe & Associates, Inc. et al., | | |
| | : | |
| Defendants-Appellees. | | |
| | : | |

D E C I S I O N

Rendered on December 2, 2014

*Law Offices of James P. Connors*, and *James P. Connors*, for appellants.

*Baker & Hostetler, LLP, Elizabeth A. McNellie*, and *Matthew W. Hoyt*, for appellees.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, J.

{¶ 1} Barbara Blackburn and Heather Esposito, plaintiffs-appellants, appeal from a judgment entered by the Franklin County Court of Common Pleas granting summary judgment for a second time in favor of defendants-appellees, Sam S. Jaffe, D.D.S., and American Dental Centers, Dr. Sam Jaffe & Associates, Inc. ("ADC"). This case is before us pursuant to a renewed appeal after our remand in *Blackburn v. Am. Dental Ctrs.*, 10th Dist. No. 10AP-958, 2011-Ohio-5971, and our recitation of facts is largely taken from that decision.

{¶ 2}  ADC has several dental offices in Ohio and Pennsylvania, employing dentists and staff at each location. Dr. Jaffe is the sole shareholder in ADC. Esposito began working for ADC in November 1999 as a dental hygienist at the Maple Canyon office in Columbus. Blackburn began working for ADC in October 2001 as a dental assistant in the same office. Dr. Sherman Allen, who is not a party to this action but whose alleged misconduct informs much of appellants' narrative, began working for ADC as a dentist in the Maple Canyon office sometime around June 2002.

{¶ 3}  Appellants alleged in their complaint that, after ADC hired Dr. Allen, they began investigating Dr. Allen's background and discovered he had lost his dentistry license in Michigan, had been convicted of criminal offenses in Michigan, and under the terms of his sentence, was not supposed to leave Michigan.  Appellants also claimed to have witnessed Dr. Allen engage in substandard and dangerous patient treatment that resulted in permanent damage or loss of teeth.  Much of this involved unnecessary dental procedures or deliberately botched work to generate further treatment and thus higher billings for appellees and Dr. Allen.  Appellants further claimed to have witnessed Dr. Allen at work intoxicated, hung over, smelling of alcohol, and falling asleep while examining patients.  Appellants claimed that they informed their supervisors with ADC of these issues regarding Dr. Allen, but rather than act to protect patients from this conduct, ADC management and staff retaliated against appellants by, among other things, harassing appellants, warning them not to lodge further complaints, threatening them with legal action for defamation, reducing their wages, assigning them unfavorable work duties, and denying promotions.

{¶ 4}  ADC terminated Dr. Allen's employment sometime between September and November 2002.  ADC terminated Esposito's employment on November 7, 2002. Blackburn continued to work for ADC for a time after these events despite ongoing workplace tension.

{¶ 5}  Blackburn wrote a letter to appellees on April 28, 2003, discussing Dr. Allen's past professional misconduct as an ADC employee, among other things. On May 5, 2003, Blackburn appeared, with her identity disguised, on a local television news program to discuss the unsafe conditions at ADC, including Dr. Allen's dangerous and unethical treatment methods.  A co-worker, Janise Boggs, wrote a letter to appellees on May 6,

2003, indicating that she and Blackburn would not return to work until they felt safe working there. Blackburn never returned to work. Blackburn claims she was terminated from her employment, while appellees claim Blackburn abandoned her position.

{¶ 6} Appellants, initially joined by several other former employees who are no longer parties to the case, twice initiated, then dismissed, actions against ADC. Finally, on January 4, 2008, appellants filed the present complaint against appellees. Both appellants alleged wrongful termination in violation of public policy, violations of the Ohio whistleblower statute (R.C. 4113.52), negligent hiring and retention in employment, slander and tortious interference with business relationships and employment, and negligent or intentional infliction of emotional distress. Blackburn alone added a claim for malicious prosecution and abuse of process. Appellees filed an answer and counterclaim, alleging fraud, unjust enrichment, tortious interference with business relationships, and defamation.

{¶ 7} On November 20, 2009, appellees filed a motion for summary judgment. The trial court granted appellees' summary judgment motion with respect to Blackburn and Esposito's R.C. 4113.52 whistleblower claims, public policy wrongful termination claims, negligent or intentional infliction of emotional distress claims, tortious interference with business relationship claims, and slander claims. The trial court also granted judgment for appellees on Blackburn's separate claims for malicious prosecution and abuse of process. The parties agreed to dismiss the remaining claims and counterclaims. On September 7, 2010, the trial court entered final judgment reflecting this first grant of summary judgment in favor of appellees and the subsequent voluntary dismissals, and the first appeal to this court ensued.

{¶ 8} In *Blackburn*, we found the trial court did not err when it granted summary judgment on appellants' whistleblower claims as well as their claims for negligent or intentional infliction of emotional distress, slander, and tortious interference with business relationships, and Blackburn's separate claims for malicious prosecution and abuse of process. However, we concluded that the trial court erred when it held that as a matter of law appellants had insufficiently pleaded in their complaint the claims for public policy wrongful discharge based on drug and substance abuse in the workplace, patient safety, and workplace safety. We remanded the matter for the trial court to address under

the correct standard whether appellees were entitled to summary judgment on these public policy wrongful discharge claims. *Id.* at ¶ 23-27.

{¶ 9} On remand, appellees filed a supplemental memorandum with the trial court in support of their prior motion for summary judgment. They argued that summary judgment was again appropriate under the laws of the case established by our decision in *Blackburn*. The trial court considered appellees' supplemental filing and also granted leave to appellants to file a response. In this, appellants presented their proposed legal authority supporting the viability of their public policy wrongful discharge claims based on considerations of drug and substance abuse in the workplace, hazardous practices affecting patient safety, and general workplace safety. On June 19, 2013, the trial court issued a decision again granting appellees' motion for summary judgment. Appellants appeal the judgment of the trial court, asserting the following assignment of error:

> THE TRIAL COURT ERRONEOUSLY HELD, FOR A SECOND TIME ON REMAND, THAT THE APPELLANTS FAILED TO SUFFICIENTLY "STATE" PUBLIC POLICY WRONGFUL TERMINATION CLAIMS.

{¶ 10} Appellants argue in their assignment of error that the trial court erred in granting summary judgment to appellees. Pursuant to Civ.R. 56(C), summary judgment is proper if: (1) no genuine issue as to any material fact remains to be litigated, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327 (1977). Appellate review of a lower court's entry of summary judgment is de novo, applying the same standard used by the trial court. *McKay v. Cutlip*, 80 Ohio App.3d 487, 491 (9th Dist.1992). The party seeking summary judgment initially bears the burden of informing the trial court of the basis for the motion and identifying portions of the record that demonstrate an absence of genuine issues of material fact as to the essential elements of the non-moving party's claims. *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). The movant must point to some evidence in the record of the type listed in Civ.R. 56(C) in support of his motion. *Id.* Once this burden is satisfied, the non-moving

party has the burden, as set forth in Civ.R. 56(E), to offer specific facts showing a genuine issue for trial. *Id.* The non-moving party may not rest on the allegations or denials in the pleadings, but must affirmatively demonstrate the existence of a genuine issue of material fact to prevent the granting of a motion for summary judgment. Civ.R. 56(C); *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115 (1988).

{¶ 11} As a preliminary matter, we note that appellees have not formally stated a "defensive" cross-assignment of error pursuant to App.R. 3(C)(2), but nonetheless assert the trial court erred in allowing supplemental briefing by appellants after remand from this court. Appellees argue that the trial court should not have considered the additional arguments and evidentiary materials submitted by appellants, and that the court was limited to those materials submitted by the parties in their memoranda leading up to the first grant of summary judgment preceding the initial appeal.

{¶ 12} We find there is no basis for such a limitation on the trial court. To appellees' advantage, the court chose to consider the previous summary judgment motion as still viable, rather than requiring appellees to formally refile it, as would be the most common practice. *See, e.g.*, *Hudson & Keyse, L.L.C. v. Carson*, 10th Dist. No. 08AP-1061, 2009-Ohi0-2656; *Crites v. Anthem Life Ins. Co.*, 3d Dist. No. 4-13-13, 2014-Ohio-1682. There is no apparent procedural bar against the trial court impliedly reviving the motion in this manner, but conversely there is no authority for the proposition that the trial court must "freeze" the pleadings in their pre-appeal state and consider the motion for summary judgment as it lay prior to our decision in *Blackburn*. In fact, dicta to the contrary is common: "On remand, the trial court received new evidentiary material submitted by the parties, and once again granted summary judgment for appellees." *Runyon v. Dickens*, 4th Dist. No. 1467 (Oct. 14, 1982), *appeal dismissed on other grounds*. This practice is particularly appropriate after an appellate remand that directly addressed and clarified the law as initially applied by the trial court.

{¶ 13} Moreover, in the present case, it was *appellees* who initiated the process of supplemental briefing after remand by submitting an additional memorandum to "[alert] the trial court to the Ohio Supreme Court's September 2011 decision in *Dohme v. Eurand America, Inc.*, [130 Ohio St.3d 168,] 2011-Ohio-4609." (Appellees' Brief, 18.) Having themselves benefited from additional briefing, appellees cannot now complain the trial

court should have denied appellants the same opportunity. We find no error in the trial court's consideration of additional summary judgment materials after remand.

{¶ 14} We now turn to the merits of the appeal. As we discussed in *Blackburn*, an exception to the employment-at-will doctrine exists where the employee's discharge violates public policy. *Painter v. Graley*, 70 Ohio St.3d 377 (1994). To establish a prima facie claim of wrongful discharge in violation of public policy, the employee must demonstrate the following four elements: (1) that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation, or in the common law (the "clarity" element), (2) that dismissal of employees under circumstances like those involved in the plaintiff's dismissal would jeopardize that public policy (the "jeopardy" element), (3) that the plaintiff's dismissal was motivated by conduct related to the public policy (the "causation" element), and (4) that the employer lacked overriding legitimate business justification for the dismissal (the "overriding justification" element). *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70 (1995). The clarity and jeopardy elements are questions of law to be decided by the court, and the causation and overriding justification elements are questions of fact to be decided by the fact finder. *Id.* at 70.

{¶ 15} The failure of appellants' whistleblower claims does not preclude a common law claim for wrongful discharge in violation of public policy, because the whistleblower statute supplements rather than replaces the common law cause of action. *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 233 (1990). "An at-will employee who is discharged or disciplined in violation of the public policy embodied in R.C. 4113.52 may maintain a common-law cause of action against the employer pursuant to *Greeley* * * * and its progeny, so long as that employee had fully complied with the statute and was subsequently discharged or disciplined." *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134 (1997), paragraph three of the syllabus. However, if an employee fails to strictly comply with the whistleblower requirements of R.C. 4113.52, as we found in *Blackburn*, the employee cannot base a *Greeley* claim solely upon the public policy embodied in that statute. *Id.* at 153. Rather, the employee must identify an independent source of public policy to support her claim. *See Thompson v. Gynecologic Oncology & Pelvic Surgery Assoc.*, 10th Dist. No. 06AP-340, 2006-Ohio-6377, ¶ 50 ("[A] plaintiff may not bring a public policy tort claim based on the public policy embodied in a statute unless

she either complies with the statute embodying the public policy or identifies an independent source of public policy supporting her claim."); *Lesko v. Riverside Methodist Hosp.*, 10th Dist. No. 04AP-1130, 2005-Ohio-3142, ¶ 34 ("[A]ppellant is entitled to bring a public policy tort claim regardless of whether she complied with R.C. 4113.52, as long as she can identify a source of public policy separate from the public policy embodied in R.C. 4113.52.").

{¶ 16} In order to satisfy the clarity element, the plaintiff must "articulate a clear public policy by citation of specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law." *Dohme* at syllabus. The court's holding in *Dohme* largely reprises earlier Supreme Court of Ohio holdings on the topic: " 'Clear public policy' sufficient to justify an exception to the employment-at-will doctrine is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources, such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law." *Painter* at paragraph three of the syllabus.

{¶ 17} If not expressed in reference to federal law, the public policy in question must exist at the state, rather than local, level, either through statute or common law expressed in a court decision. *Burns v. Ohio State Univ. College of Veterinary Med.*, 10th Dist. No. 13AP-633, 2014-Ohio-1190, ¶ 13, citing *Dohme* at ¶ 21. *Dohme* makes clear, however, that beyond general principles of notice pleading, the plaintiff may use summary judgment materials to flesh out the public policy relied upon. *Dohme* at ¶ 20-21 ("In Dohme's materials opposing summary judgment, he recited syllabus language. * * * As the nonmovant, Dohme * * * may not rely merely upon the pleadings or upon unsupported allegations.").

{¶ 18} In this appeal, appellants first argue that in *Blackburn* this court already found that appellants' complaint sufficiently pled their public policy claims, and the trial court was therefore bound by the laws of the case to find that summary judgment could not be granted on those claims. That is not what we held. To the contrary, we found the trial court should look past the pleadings and consider the claims under the summary judgment standard: "Having found that appellants did not sufficiently raise claims for

public policy wrongful discharge based upon drug and substance abuse in the workplace, patient safety, and workplace safety, the trial court never addressed whether appellees were entitled to summary judgment on these claims. We decline to address these issues for the first time on appeal. Therefore, we remand the matter for the trial court to address whether appellees were entitled to summary judgment based upon these public policy wrongful discharge claims." *Id.* at ¶ 27.

{¶ 19} Appellants next argue the trial court misapplied *Dohme* when it granted summary judgment to appellees on the public policy claims for wrongful termination. Appellants argue that the trial court improperly limited its determination of the clarity element by again restricting review to the bare allegations in the complaint.  This appears accurate: the trial court found in its decision that, with regard to the public policy claims involving drug and substance abuse, "[w]hile Plaintiffs articulated numerous sources of the public policy in their 'Supplemental Authority,' the Court believes that this falls short of *Dohme*'s requirement that the sources *be articulated in the Complaint.*" (Emphasis added.)  As explained above, *Dohme* contains no such limitation and clearly provides that the existence of a public policy may be established in summary judgment materials, not just the complaint.  Appellants are therefore correct that the trial court misread *Dohme* in this respect.  Nonetheless, the trial court's judgment may yet be affirmed if we find that all the materials properly before the court fail to preserve a genuine issue of material fact on the public policy claims.

{¶ 20} Before the trial court, appellants proposed the existence of three clear public policies under the statewide law of Ohio: a policy against drug and substance abuse in the workplace; a policy promoting workplace safety generally; and a policy promoting patient safety.  With respect to workplace safety, both appellants claim to have reported issues arising from Dr. Allen's conduct, generally alleging that he physically accosted or harassed appellants, threatened them, and had other violent confrontations in the workplace, including an instance in which another dentist in the same office brought a machete to work to confront Dr. Allen.  Both appellants asserted that, when they brought these problems to the attention of their superiors, they were told to ignore the situation or face termination.

{¶ 21} Appellants cite *Kulch*, which held that employer retaliation against employees who file Occupational Health and Safety Administration ("OSHA") complaints concerning unsafe or unhealthy conditions in the workplace was actionable. Appellants also rely on *Pytlinski v. Brocar Prods. Inc.*, 94 Ohio St.3d 77, 2002-Ohio-66, paragraph one of the syllabus: "Ohio public policy favoring workplace safety is an independent basis upon which a cause of action for wrongful discharge in violation of public policy may be prosecuted."

{¶ 22} The trial court in our case noted that appellants had not filed formal OSHA complaints as in *Kulch*, and could not use that holding as basis for a retaliation claim. Implicitly questioning the continued viability of *Pytlinski*, the trial court preferred to rely on the Supreme Court's much more recent holding in *Dohme*, which stated that the plaintiff in that case failed to meet the clarity element because he "did not cite any *specific* statement of law in support of his claim of public policy that was drawn from the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law." (Emphasis added.) *Dohme* at ¶ 21.

{¶ 23} Although the plaintiff in *Dohme* had cited the syllabus law of *Pytlinski*, as appellants do here, and *Pytlinski* at its heart acknowledges the existence of a clear public policy in Ohio favoring workplace safety, the Supreme Court in *Dohme* ultimately held that a plaintiff cannot rely on a "generally mentioned or identified" legal basis for statewide policy when meeting the clarity requirement for discharge in violation of public policy, i.e., the syllabus law of a prior Supreme Court case. *Id.* In other words, *Dohme* can only be read for the proposition that prior syllabus law rendered by the Supreme Court in *Pytlinski* does not suffice to establish a clear public policy.

{¶ 24} *Dohme*, however, is distinguishable in one important respect from the case before us. Appellants, unlike the plaintiff in *Dohme*, do cite to more than the syllabus of *Pytlinski*. They cite to two specific sections of the Ohio Revised Code, R.C. 4101.11 and 4101.12, as specific statutory support for their proposed public policy promoting workplace safety for employees and patients.

{¶ 25} These sections provide as follows:

R.C. 4101.11

Duty of employer to protect employees and frequenters

Every employer shall furnish employment which is safe for the employees engaged therein, shall furnish a place of employment which shall be safe for the employees therein and for frequenters thereof, shall furnish and use safety devices and safeguards, shall adopt and use methods and processes, follow and obey orders, and prescribe hours of labor reasonably adequate to render such employment and places of employment safe, and shall do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees and frequenters.

R.C. 4101.12

Duty of employer to furnish safe place of employment

No employer shall require, permit, or suffer any employee to go or be in any employment or place of employment which is not safe, and no such employer shall fail to furnish, provide, and use safety devices and safeguards, or fail to obey and follow orders or to adopt and use methods and processes reasonably adequate to render such employment and place of employment safe. No employer shall fail to do every other thing reasonably necessary to protect the life, health, safety, and welfare of such employees or frequenters. No such employer or other person shall construct, occupy, or maintain any place of employment that is not safe.

{¶ 26} Appellants and appellees in this case are indisputably employees and employers respectively. The dental office operated by appellees is a "place of employment." While R.C. 4101.11 and 4101.12 expressly are not affected by the repeal of other statutes concerning the former Division of Industrial Compliance, they did lose their associated definitional sections. *See* 1995 S.B. No. 162 and former R.C. 4101.01(E). Elsewhere in Title 41, Labor and Industry, however, we find the following relevant definition of "frequenter": " 'Frequenter' means every person, other than an employee, who may go in or be in a place of employment under circumstances which render the person other than a trespasser." R.C. 4121.01(A)(5). *See generally McClary v. M/I*

*Schottenstein Homes, Inc.*, 10th Dist. No. 03AP-777, 2004-Ohio-7047, ¶ 59-60.  We find that patients in a dental office fit this definition. The parties and premises in this case align with the categories covered under the statute.

{¶ 27} We accordingly find that these statutes together establish that there exists a clear public policy that is manifested in a state or federal constitution, statute, or administrative regulation in Ohio favoring workplace safety for employees and frequenters.  Appellants have therefore met the clarity element in this case.  There is a statewide policy prohibiting termination of employees who report conduct and practices in a dental practice that present a risk of severe harm to patients or staff.

{¶ 28} Finding that the clarity element is met, we turn to the jeopardy element of a wrongful termination claim: whether termination of employees in circumstances similar to appellants would jeopardize the public policy. In this case, the record is replete with evidence of the professional shortcomings of Dr. Allen.  The evidence indicates he routinely worked when hung over or intoxicated to the point of dysfunction, and the results for some patients were disfiguring, painful, and permanent.  He intentionally botched simple procedures in order to generate lucrative repair work after the fact. Most relevant to the jeopardy element, the materials submitted by appellants, if believed, make it clear that their terminations were in direct response to appellants' attempts to warn their employer about the grossly substandard care provided by Dr. Allen to ADC patients. While appellees may yet contest the third and fourth elements as questions of fact before the trial court, we find that the second, or jeopardy, element of a wrongful termination claim is met here as well.

{¶ 29} We accordingly find the trial court erred in concluding that there is no Ohio public policy against retaliation by employers against employees who report workplace conditions that jeopardize staff and dental patient safety.  This aspect of appellants' assignment of error has merit and is sustained.  In so holding, based on R.C. 4101.11 and 4101.12, we specifically disagree with the Sixth District's holding in *Whitaker v. FirstEnergy Operating Co.*, 6th Dist. No. OT-12-021, 2013-Ohio-3856, ¶ 25, which found those statutes too "general and broad" to support such a claim, and agree with the dissent in that case.  (Yarbrough, J., dissenting.)

{¶ 30} With respect to the allegation that there is a clear statewide public policy against drug abuse in the workplace, other than the general criminalization of some types of drug use, we find that this public policy is essentially subsumed into the two others cited. To the extent the alleged drug abuse is a component of the threat to employee and patient safety, it falls under the workplace safety rubric generally rather than as an independent public policy grounds.

{¶ 31} In summary, we find the trial court erred in granting summary judgment on appellants' claims for wrongful discharge in violation of public policy. Appellants have met the clarity and jeopardy elements based on their citation to statutes establishing clear public policies promoting patient safety and employee safety in the workplace. Accordingly, on remand, the trial court will consider the final two elements of the wrongful discharge test under *Dohme* with respect to these claims. In accordance with the foregoing, appellants' assignment of error is sustained in part and overruled in part, and this matter is remanded to the Franklin County Court of Common Pleas for further proceedings in accordance with law, consistent with this decision.

*Judgment affirmed in part and*
*reversed in part; cause remanded with instructions.*

SADLER, P.J., and TYACK, J., concur.

————————————