DEAN, Appellant,

v.

CONSOLIDATED EQUITIES REALTY # 3, L.L.C., d.b.a. Colerain Ford, Appellee.

[Cite as *Dean v. Consol. Equities Realty # 3, L.L.C.,*
182 Ohio App.3d 725, 2009-Ohio-2480.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–080931.

Decided May 29, 2009.

Katz, Greenberger & Norton, L.L.P., and Stephen E. Imm, for appellant.

Strauss & Troy, L.P.A., and Charles Ashdown, for appellee.

SUNDERMANN, Judge.

{¶ 1} Brennan Dean appeals the trial court's entry of summary judgment against him on his claim for wrongful termination. We conclude that the public-policy exception to the at-will-employment doctrine did not apply in this case, because there is no clear public policy against the credit fraud that Consolidated Equities Realty # 3, L.L.C., d.b.a. Colerain Ford ("Colerain Ford"), allegedly committed. The judgment of the trial court is affirmed.

## Background

{¶ 2} Dean was employed as a general sales manager by Colerain Ford. In his complaint, he alleged that less than a month into his employment, he had witnessed another employee of Colerain Ford practicing the "kinking" of deals. According to Dean, "kinking" was a term used to describe the falsifying of credit applications for potential customers to gain financing approval.

{¶ 3} In this case, Dean alleged that Charles Schwab, a Colerain Ford employee, had advised a customer to list his employer as "Lawrenceburg Contractors," rather than to indicate on the credit application that he was a self-employed contractor. Creditors would look less favorably upon the application of a self-employed person. The credit application had then been submitted to AmeriCredit, a lender that provided financing for Colerain Ford customers. Dean claimed that after the application had been submitted to AmeriCredit, the customer had called Colerain Ford and had spoken to Dean. According to Dean, the customer had stated that AmeriCredit had called to verify his employment, and that he needed to know what company name had been written on the

application. Dean claimed that the customer had stated that he wanted to "have our stories straight."

{¶ 4} On the day after the phone call with the customer, Dean approached Yun Hee Jong, an owner of Colerain Ford, about his telephone conversation with the customer. According to Dean, Jong cut him off as he was describing the call, asked him for the customer's name and number, and terminated the meeting. That same day, Dean alleged, Dean had a conversation with Mark Hume, General Manager of Colerain Ford, who stated that he knew about Dean's conversation with Jong and that he was aware of the customer's credit application because he had overheard Schwab talking about it. Two days later, Dean was terminated by Colerain Ford.

{¶ 5} Dean filed a claim against Colerain Ford, alleging that he had been wrongfully terminated in violation of public policy. Colerain Ford filed a motion for summary judgment, which was granted by the trial court.

## Wrongful Termination in Violation of Public Policy

{¶ 6} In his sole assignment of error, Dean asserts that the trial court erred when it granted summary judgment to Colerain Ford. Summary judgment is proper when (1) there remains no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion, and with the evidence construed in favor of the party against whom the motion is made, that conclusion is adverse to that party.[1] We review the trial court's decision to grant summary judgment de novo.[2]

{¶ 7} Dean was an at-will employee. Under the common-law doctrine of at-will employment, Dean could be fired at the will of Colerain Ford. But in *Greeley v. Miami Valley Maintenance Contrs., Inc.*, the Ohio Supreme Court recognized an exception to the at-will doctrine, holding that "the right of employers to terminate employment at will for 'any cause' no longer includes the discharge of an employee where the discharge is in violation of a statute and thereby contravenes public policy."[3] The public-policy exception "is not limited to public policy expressed by the General Assembly in the form of statutory enactments, but may also be discerned as a matter of law based on other sources,

---

1. Civ.R. 56(C); *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327, 4 O.O.3d 466, 364 N.E.2d 267.

2. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243.

3. *Greeley v. Miami Valley Maintenance Contrs., Inc.* (1990), 49 Ohio St.3d 228, 551 N.E.2d 981, paragraph two of the syllabus.

such as the Constitutions of Ohio and the United States, administrative rules and regulations, and the common law."[4]

■ {¶ 8} To succeed on his claim for wrongful termination in violation of public policy, Dean had to demonstrate "(1) [t]hat a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element); (2) [t]hat dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element); (3) [that the] plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element); [and] (4) [that the] employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)."[5] The clarity and jeopardy elements present questions of law, while the causation and overriding-justification elements present questions of fact.[6]

■ {¶ 9} Colerain Ford argues that there was no fraud. That the customer's employment status was incorrect on the credit application, claims Colerain Ford, was a mistake. But whether a fraud was committed by Colerain Ford and its customer is an issue of fact to be determined by the trier of fact. Instead, for purposes of the summary judgment motion, we must determine whether Ohio has a clear public policy against the activity that Dean alleged had occurred. If so, we must determine whether Dean presented enough evidence on the jeopardy element.

{¶ 10} Dean argues that Ohio has a clear public policy against fraud. He contends that Ohio has enacted many antifraud statutes. Dean points to R.C. 2921.13(A)(8) as evidence of Ohio's public policy. That statute makes it a crime for a person "to knowingly make a false statement * * * to induce another to extend credit to * * * the offender, * * * when the person to whom the statement is directed relies upon it to that person's detriment."[7]

{¶ 11} In *Hale v. Volunteers of Am.*, this court considered whether regulations regarding the operation of residential facilities sufficiently manifested a clear public policy independent of the whistleblower statute to preclude the termination of two employees who had spoken out about the care and treatment of residents

---

4. *Painter v. Graley* (1994), 70 Ohio St.3d 377, 639 N.E.2d 51, paragraph three of the syllabus.

5. (Emphasis sic.) *Collins v. Rizkana* (1995), 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653, citing Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398–399.

6. Id. at 70, 652 N.E.2d 653.

7. R.C. 2921.13(A)(8).

in a residential treatment center.[8]   After looking to decisions from the Ohio Supreme Court and other appellate courts, we concluded that "the independent source of public policy must parallel the public policy set forth in the whistleblower statute."[9]   A clear public policy included those policies that imposed an affirmative duty on the employee to report a violation, that specifically prohibited employers from retaliating against employees who had filed complaints, or that protected the public's health and safety.[10]   In *Hale*, we concluded that none of those factors were present in the plaintiffs' wrongful-termination claim.[11]   And we determined that the regulations that had been cited by the plaintiffs did not specifically protect residents of a treatment facility from abuse.[12]

{¶ 12} Dean's wrongful-termination claim was similarly lacking.   Underlying our decision in *Hale* was the recognition that any exception to the at-will doctrine should be narrowly applied.   While we acknowledge that Ohio does have a general policy against fraud, the public policy against the alleged conduct of Colerain Ford is not manifested clearly enough to warrant abrogating the at-will-employment doctrine.   Dean was under no independent duty to report Colerain Ford's conduct, and there was no specific prohibition against Colerain Ford that barred it from retaliating against Dean for speaking out against the fraud.   Finally, R.C. 2921.13(A)(8) would have made the customer's alleged actions unlawful.   But it did not specifically prohibit the alleged actions of Colerain Ford.

{¶ 13} While we need not determine at this point whether the fraud claimed by Dean did actually occur, we acknowledge that if Colerain Ford did practice "kinking" as described by Dean, the practice is reprehensible.   But even so, the concededly reprehensible practice is not contrary to a clear public policy such that it precludes application of the at-will-employment doctrine.   Dean's assignment of error is not well taken, and we therefore affirm the judgment of the trial court.

Judgment affirmed.

PAINTER, P.J., and DINKELACKER, J., concur.

---

8.   *Hale v. Volunteers of Am.,* 158 Ohio App.3d 415, 2004-Ohio-4508, 816 N.E.2d 259.

9.   Id. at ¶ 45.

10.   Id. at ¶ 45–46.

11.   Id.

12.   Id.