[Cite as *Lanzer v. Louisville*, 2016-Ohio-8071.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


KEVIN LANZER

     Plaintiff-Appellant

-vs-

CITY OF LOUISVILLE, OHIO, et al.

     Defendants-Appellees

JUDGES:
Hon. Sheila G. Farmer, P. J.
Hon. W. Scott Gwin, J.
Hon. John W. Wise, J.

Case No. 2015 CA 00170

O P I N I O N


| | |
|---|---|
| CHARACTER OF PROCEEDING: | Civil Appeal from the Court of Common Pleas, Case No. 2014 CV 02007 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | December 5, 2016 |


APPEARANCES:

For Plaintiff-Appellant

CHARLES W. OLDFIELD
DENNIS HAINES
GREEN HAINES SGAMBATI
City Centre One, Suite 800
100 Federal Plaza East
Youngstown, Ohio 44503

For Defendant-Appellee Ault

JAMES M. LYONS, JR.
HANNA, CAMPBELL, & POWELL
3737 Embassy Parkway
Suite 100
Akron, Ohio 44333

For Defendant-Appellees City, et al.

JOHN D. LATCHNEY
O'TOOLE, MCLAUGHLIN, DOOLEY
& PECORA
5455 Detroit Road
Sheffield Village, Ohio 44054


For Defendant-Appellee Jeffries

JAMES L. MESSENGER
RICHARD J. THOMAS
JERRY R. KRZYS
HENDERSON, COVINGTON,
MESSENGER, NEWMAN & THOMAS
6 Federal Plaza Central, Suite 1300
Youngstown, Ohio 44503

*Wise, J.*

**{¶1}** Plaintiff-Appellant Kevin Lanzer appeals the May 28, 2015, decisions of the Stark County Court of Common Pleas granting partial summary judgment in favor of Appellees City of Louisville, Ohio, Patricia Fallot, Richard Guiley, Guy Guidone, Cheryle Casar and Thomas McAllister; granting summary judgment in favor of E. Thomas Ault, City Manager; and granting Appellee William Jeffries' motion to dismiss.

## STATEMENT OF THE FACTS AND CASE

**{¶2}** The facts of the case are as follows:

**{¶3}** On June 25, 2012, the City of Louisville hired Appellant Kevin Lanzer as its Fire Chief. The Louisville Fire Department is an "all-call paid part-time" department. (Ault Depo. at 79).

**{¶4}** The City of Louisville conducts fire safety inspections through the Fire Department. As of July, 2013, the Louisville Fire Department had four designated fire inspectors. (Lanzer Depo. at 21). At the beginning of the year each of those inspectors is given a list, prepared by Capt. Rob Yoder (one of the four inspectors), of the buildings that they are responsible for inspecting. (*Id.* at 27). The inspectors were given discretion and flexibility as to when they inspect the buildings on their list. (*Id* at 21, 28-29).

**{¶5}** In 2012, 111 fire safety inspections were conducted and between January 1 and September 7, 2013, 88 fire safety inspections were conducted. (Ault Depo. at 25, 42).

**{¶6}** On July 31, 2013, Capt. Rob Yoder conducted a fire safety inspection of the property known as Parksite Warehouse #2, located at 3663 Tulane Street in the city of Louisville. Parksite Warehouse #2 is owned, in part, by William Jeffries, a local

businessman and property owner in the City of Louisville. At the time of the inspection, part of the building was leased to a tenant.

{¶7} Captain Yoder's fire safety inspection revealed violations of the Ohio Fire Code, so he issued a notice of the alleged violations. The City Defendants admitted that this inspection was conducted in accordance with Ohio law.

{¶8} Jeffries was displeased with the manner in which Captain Yoder conducted the fire safety inspection. Jeffries contacted Ault and asked that he be personally contacted prior to any fire safety inspections at properties he owned but leased to others. (Ault Depo. at 42). Jeffries also expressed his displeasure with the use of red ink in the paperwork used to document fire safety violations. (Ault Depo., pp.43-45). According to Lanzer and Ault, Jeffries didn't like that the Fire Department documents used red ink because it made it seem like the Fire Department was "hollering at him." (Lanzer Depo. at 44; Ault Depo. at 43-45).

{¶9} Ault discussed these issues with Lanzer, and Lanzer instructed his fire safety inspectors to contact Jeffries prior to inspecting any property Jeffries owned. (Ault Depo. at 42). This prior notification policy was only instituted as to Jeffries and his properties, not to other property owners in the City of Louisville. (Ault Depo. at 137-138.) The color of the ink used on the inspection reports was also changed. (Lanzer Depo. at 45-46).

{¶10} On August 29, 2013, Captain Yoder re-inspected the Parksite property but failed to give prior notice to Jeffries. (Ault Depo. at 42). Captain Yoder later explained that he thought the special requirement to notify Jeffries applied only to the initial inspection and not the re-inspection. (Lanzer Depo. at 41).

**{¶11}** Jeffries was very upset that he was not notified of the re-inspection. (Ault Depo. at 27-28).  Jeffries contacted Ault "*** and stated very bluntly that he wanted Mr. Lanzer fired and *** he would go to council to see that that happened." (Ault Depo. at 28, 42). Ault informed Jeffries that, as City Manager, he alone had sole authority to fire Lanzer. (Ault Depo. at 42).

**{¶12}** At both the inspection and re-inspection, Captain Yoder was granted entry to the premises and accompanied on the inspection by a supervisor or manager of the business entity that leased the premises from Jeffries. (Ault Depo. at 122; Lanzer Depo. at 56). There is no evidence the inspection or re-inspection was conducted in a manner that violated Ohio law or the policies and procedures of the Louisville Fire Department. (Ault Depo. at 39-40, 72-73). In fact, Ault and other city officials later met with a representative of the State Fire Marshall's Office and that person, Jamie Snyder, did not indicate that the manner in which the inspections of the Parksite property occurred violated Ohio law. (Ault Depo. at 69-70).

**{¶13}** Even though Captain Yoder had failed to follow Lanzer's instruction to notify Jeffries before any fire safety inspection at one of his properties, Ault determined that Captain Yoder should not be disciplined because it was a new procedure. (Ault Depo. at 47-48). Further, Ault stated that at that time he had no plans to fire Lanzer. (Ault Depo. at 52, 138- 139).

**{¶14}** Jeffries approached City Council with regard to this incident. On September 9, 2013, City Council held a special council meeting and went into executive session. Initially, Bill Jeffries, and his brother, Mike Jeffries, were in the executive session. (Rod Guiley Depo. at 32-33). Either Bill Jeffries or Mike Jeffries expressed during that executive

session that they did not believe the fire inspection process was business friendly. (Guiley Depo. at 34). Prior to the executive session, Bill Jeffries had met with Councilman Rod Guiley regarding the inspection and re-inspection and discussed with Guiley how the inspections "would impact the *** relationship relative to the Joseph A. Jeffries Company dealing -- or having business with the City of Louisville." (Guiley Depo. at 11).

{¶15} During the special council meeting on September 9, 2013, Robert Duffrin, the City Law Director, came out of the executive session and told Ault that: "*** it was council's intent that [he] terminate the employment of Kevin Lanzer, or be terminated [himself] and have someone else do it." (Ault Depo. at 37, 58).

{¶16} Ault understood that council was telling him to fire Lanzer or that City Council would fire Ault, then someone else would fire Lanzer. (Ault Depo. at 63). Ault stated that although he thought it was wrong that he was being told to fire Lanzer, he weighed the impact to himself and his family and determined he had no choice but to follow City Council's instructions. (Ault Depo. at 61-63). Ault called Lanzer and requested that he come to Council's chambers, where he proceeded to tell Lanzer that he was fired. (Ault Depo., at 62).

{¶17} The Louisville City Charter gives the Louisville City Manager the sole authority to terminate City officers and employees. The Charter states:

> The City Manager shall be the chief executive officer and the head of the administrative branch of the City government. He shall be responsible to the Council for the proper administration of all affairs of the City and *** he shall have power and shall be required to:

(1) Appoint and, when necessary for the good of the service, remove

all officers and employees of the City ***.

**{¶18}** On August 29, 2014, Appellant Lanzer filed a Complaint in the Stark County Court of Common Pleas asserting claims of wrongful discharge in violation of public policy, tortious interference with employment, and civil conspiracy against the City of Louisville, Ohio, Patricia Fallot, Richard Guiley, Guy Guidone, Cheryle Casar and Thomas McAllister (members of Louisville City Council), E. Thomas Ault, Louisville's City Manager, and William "Bill" Jeffries.

**{¶19}** On October 3, 2014, Appellee Jeffries filed a Motion to Dismiss.

**{¶20}** On November 24, 2014, City of Louisville moved for partial summary judgment on Lanzer's wrongful termination claim

**{¶21}** On December 29, 2014, Appellee Ault filed a Motion for Summary Judgment an all claims.

**{¶22}** On January 20, 2015, Appellant filed an amended Complaint.

**{¶23}** On February 5, 2015, Appellee Jeffries filed a Motion to Dismiss all claims against him in the Amended Complaint.

**{¶24}** On May 28, 2015, the trial court entered separate judgment entries granting the City Defendants' motion for partial summary judgment; granting Ault's motion for summary judgment; and granting Jeffries' motion to dismiss.

**{¶25}** Appellant dismissed his remaining claims against the City Defendants with prejudice.

**{¶26}** Appellant now appeals, raising the following Assignments of Error for review:

**ASSIGNMENTS OF ERROR**

**{¶27}** "I. THE TRIAL COURT ERRED WHEN IT GRANTED THE CITY DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT.

**{¶28}** "II. THE TRIAL COURT ERRED WHEN IT GRANTED AULT'S MOTION FOR SUMMARY JUDGMENT.

**{¶29}** "III. THE TRIAL COURT ERRED WHEN IT GRANTED JEFFRIES' MOTION TO DISMISS."

**I., II.**

**{¶30}** We shall address Appellant's First and Second Assignments of Error simultaneously as we find they are closely related and raise similar issues.  In his first assignment of error, Appellant argues that the trial court erred in granting summary judgment in favor of the Louisville City appellees on his wrongful termination in violation of public policy claim. In his second assignment of error, Appellant argues that the trial court erred in granting summary judgment in favor of Appellee Ault on all of his claims: wrongful termination, tortious interference with employment, and civil conspiracy.

"Summary Judgment Standard"

**{¶31}** Summary judgment proceedings present the appellate court with the unique opportunity of reviewing the evidence in the same manner as the trial court.  *Smiddy v. The Wedding Party, Inc.* (1987), 30 Ohio St.3d 35, 36.  Civ.R. 56(C) provides, in pertinent part:

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact,

if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. * * * A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor.

**{¶32}** Pursuant to the above rule, a trial court may not enter a summary judgment if it appears a material fact is genuinely disputed. The party moving for summary judgment bears the initial burden of informing the trial court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. The moving party may not make a conclusory assertion that the non-moving party has no evidence to prove its case. The moving party must specifically point to some evidence which demonstrates the non-moving party cannot support its claim. If the moving party satisfies this requirement, the burden shifts to the non-moving party to set forth specific facts demonstrating there is a genuine issue of material fact for trial. *Vahila v. Hall*, 77 Ohio St.3d 421, 429, 1997-Ohio-259, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 1996-Ohio-107.

Wrongful Termination in violation of public policy -
City of Louisville Appellees/Appellee Thomas Ault

**{¶33}** The City of Louisville had employed Appellant Lanzer as an at-will employee. Under the common law employment-at-will doctrine, either party may

terminate the employment relationship for any reason, with or without cause, without giving rise to an action for damages. *See Collins v. Rizkana,* 73 Ohio St.3d 65, 67, 652 N.E.2d 653 (1995). The Ohio Supreme Court created a narrow exception to this employment-at-will doctrine in *Greeley v. Miami Valley Maintenance Contrs., Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). In *Greeley,* the court held that an employee-at-will who is discharged in violation of a public policy may maintain a cause of action for wrongful discharge. *Id.* at 234, 551 N.E.2d 981.

**{¶34}** To prove a claim for wrongful discharge in violation of public policy, an employee must establish: (1) that clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element); (2) that dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element); (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element); and (4) the employer lacked overriding legitimate business justification for the dismissal (the overriding justification element). *Leininger v. Pioneer Natl. Latex,* 115 Ohio St.3d 311, 2007-Ohio-4921, 875 N.E.2d 36, ¶10, 12.

**{¶35}** While the first two elements (clarity and jeopardy) involve questions of law, elements three and four (causation and overriding-justification) involve questions of fact. *Collins v. Rizkana,* 73 Ohio St.3d 65, 69–70, 652 N.E.2d 653 (1995).

**{¶36}** "To satisfy the clarity element of a claim of wrongful discharge in violation of public policy, a terminated employee must articulate a clear public policy by citation to specific provisions in the federal or state constitution, federal or state statutes, administrative rules and regulations, or common law." *Rebello v. Lender Processing,*

*Servs.* 2015-Ohio-1380, 30 N.E.3d 999, ¶29 (8th Dist.). "A public policy sufficient to overcome the presumption in favor of employment at will is not limited to instances in which the statute expressly forbids termination, but may be discerned from legislation generally, or from other sources of law." *Id.* "The wrongful-discharge tort is not limited to situations where the discharge violates a statute." *Id.* "Case law demonstrates that the cited policy need not prohibit discharge per se." *Id.*

**{¶37}** In his Amended Complaint, in support of his claims, Appellant alleged (1) Ohio has a clear public policy which prohibits an employer from terminating an employee for complying with his duty to enforce the law, and (2) Ohio has a public policy permitting fire chiefs and their appointees to examine and inspect property for compliance with Ohio's Fire Code to ensure health and safety of the persons and property of Ohio citizens as set forth in R.C. 3737 and Ohio Adm. Code 1301:7-7. Additionally, Appellant alleged that Louisville has a public policy which prohibits Council Members from seeking to directly appoint, hire, give direction to, supervise, suspend, discipline, or terminate any Louisville employee.

**{¶38}** Initially, we find that Appellant was not terminated for complying with his duty to follow the law. The statute and administrative code sections cited by Appellant are procedural in nature, detailing the procedure which must be followed to gain access to premises for the purposes of conducting inspections. These statutes do not direct when, how often, or even if, such inspections must take place.

**{¶39}** In its judgment entry, in deciding the clarity element, the trial court found that when conducting the inspections in this case "…, even assuming that Mr. Yoder obtained consent from the tenant, thte [sic] search of the Parksite Warehouse not only

included the portion of the premeise [sic] occupied by a tenant, but also included the unoccupied portion of the premises owned and controlled by Mr. Jeffries, whose permission was not obtained." (May 28, 2015, J/E at 5).

**{¶40}** The trial court then went on to find that based on the "undisputed facts in this case, this Court agrees that there cannot be a clear public policy in Ohio which permits warrantless administrative searches without the fire department having first obtained the property owner's consent." *Id.*

**{¶41}** Upon review, while we find that the evidence is unclear as to whether Capt. Yoder obtained the proper consent to search all parts of the building in question, the fact that Mr. Jeffries was not notified prior to the follow-up inspections, as promised, is not in dispute. This Court would emphasize that the decision to provide prior notice to Mr. Jeffries, or any other property owner, is one which the City of Louisville imposed upon itself, and is not required by statute. Only consent is required by statute. In fact, it is possible that prior notice would actually be counter-productive, allowing businesses to only temporarily rectify violations in anticipation of an upcoming inspections.

**{¶42}** However, as stated above, the City of Louisville had made assurances to Mr. Jeffries that he would receive prior notice before any further/additional inspections were conducted, and that did not happen. From the record it appears that Mr. Jeffries is a valued, local businessman and constituent, and that City Council terminated Appellant for breaking the promises which had been made to Mr. Jeffries. We find that such grounds are sufficient to terminate Appellant's at-will employment.

**{¶43}** We do not find that Appellant has proven a violation of a clear public policy warranting abrogation of the employment-at-will doctrine.

Tortious Interference with Employment – Appellee Thomas Ault

**{¶44}**  In Ohio, the elements of tortious interference with employment relationship are as follows: 1) the existence of an employment relationship between plaintiff and the employer; 2) the defendant was aware of this relationship; 3) the defendant intentionally interfered with this relationship; and 4) the plaintiff was injured as a proximate result of the defendant's acts. *Costaras v. Dunnerstick,* Lorain App. No. 04CA008453, 2004-Ohio-6266. Thus, there are three players in a tortious interference claim: the plaintiff, the defendant, and a third-party employer.

**{¶45}**  Here, the Louisville City Charter provides that the City Manager, in this case Appellee Ault, has the express authority to terminate the Fire Chief.  Appellee Ault was therefore Appellant's supervisor.  A supervisor of an employee cannot be held liable for tortious interference with contract. *Anderson v. Minter* (1972), 32 Ohio St.2d 207. Liability for tortious interference with an employment relationship "does not extend to a supervisor who terminates or otherwise impairs the plaintiff's employment while in the course of [the supervisor's] own duties." *Hatton v. Interim Health Care of Columbus, Inc.,* Franklin App. No. 06AP-828, 2007-Ohio-1418, ¶ 25. "A person in a supervisory capacity or other position of authority over the employee cannot be sued for interfering with the employment relationship that it is his duty to monitor, supervise, or enforce." *Smiddy,* 2003-Ohio-446 at ¶ 9. Liability will not arise even in instances where a supervisor's conduct may be characterized as malicious. *Anderson v. Minter* (1972), 32 Ohio St.2d 207, 213, 291 N.E.2d 457.

**{¶46}** Appellant, in an attempt to circumvent this rule, asserts that Ault acted outside the scope of his employment because his motive in terminating Appellant was

self-centered, i.e. protecting his own job. However, plaintiff's contention is misplaced in both law and fact. " 'Malice makes a bad case worse, but does not make wrong that which is lawful.' " *Anderson v. Minter* (1972), 32 Ohio St.2d 207, 213, 61 O.O.2d 447, 291 N.E.2d 457, quoting *Johnson v. Aetna Life Ins. Co.* (1914), 158 Wis. 56, 147 N.W. 32. *See, also, Fawcett v. G.C. Murphy & Co.* (1976), 46 Ohio St.2d 245, 75 O.O.2d 291, 348 N.E.2d 144. Ault's supervisory position over Appellant entitles him to interfere. Ault serves at the pleasure of City Council. Accordingly, Ault acted within the scope of his duties when he terminated Appellant at the direction of City Council. For this reason, we affirm the trial court's decision to grant Appellee Ault summary judgment as to Appellant's claim of intentional interference with employment.

Civil Conspiracy

{¶47}   Appellant's complaint charged all of the above Appellees with participation in a civil conspiracy. The Ohio Supreme Court has defined civil conspiracy as, "a malicious combination of two or more persons to injure another in person or property, in a way not competent for one alone, resulting in actual damages." *Kenty v. Transamerica Premium Ins. Co.* (1995), 72 Ohio St.3d 415, 419, 650 N.E.2d 863. However, if all of the substantive claims underlying the conspiracy are without merit, the conspiracy claim must also fail. *Brose v. Bartlemay* (April 16, 1997), 1st Dist. Nos. C-960423, A-9105270, unreported, citing *Minarik v. Nagy* (1963), 8 Ohio App.2d 194, 195, 193 N.E.2d 280. The substantive claims underlying Appellant's conspiracy theory are wrongful termination and intentional interference with employment. We have already addressed these claims above and found that summary judgment was proper. Therefore, we find that the trial

court was correct in also granting summary judgment on Appellant's civil conspiracy claim.

**{¶48}** Appellant's First and Second Assignments or Error are overruled.

**III.**

**{¶49}** In his Third Assignment of Error, Appellant argues that the trial court erred in granting Appellee Jeffries' motion to dismiss. We disagree.

**{¶50}** Appellant's complaint alleged claims of tortious interference with employment relationship and civil conspiracy against Appellee Jeffries. The trial court found that the *Noerr-Pennington*[1] doctrine provided immunity for Appellee Jeffries' actions and granted his 12(b) motion to dismiss.

**{¶51}** Our standard of review on a Civ.R. 12(B)(6) motion to dismiss is de novo. *Greeley v. Miami Valley Maintenance Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990). A motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint. *State ex rel. Hanson v. Guernsey County Board of Commissioners,* 65 Ohio St.3d 545, 1992–Ohio–73, 605 N.E.2d 378. Under a de novo analysis, we must accept all factual allegations of the

---

[1] *Noerr–Pennington* immunity is a "doctrine [that] originated in the anti-trust context as the proposition that 'joint efforts to influence public officials do not violate the antitrust laws even though intended to eliminate competition. Such conduct is not illegal, either standing alone or as part of a broader scheme itself violative of the Sherman Act.' " *WE, Inc. v. Philadelphia, Dept. of Licenses & Inspections,* 174 F.3d 322, 326 (3d Cir.1999), quoting *United Mine Workers of Am. v. Pennington,* 381 U.S. 657, 670, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *see also Noerr,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464. The United States Supreme Court has held, "Those who petition government for redress are generally immune from antitrust liability." *Professional Real Estate Investors,* 508 U.S. at 56, 113 S.Ct. 1920, 123 L.Ed.2d 611. This type of immunity from antitrust liability is otherwise known as *Noerr–Pennington* immunity.

complaint as true and all reasonable inferences must be drawn in favor of the nonmoving party. *Byrd v. Faber,* 57 Ohio St.3d 56, 565 N.E.2d 584 (1991).

{¶52}  A trial court should dismiss a complaint for failure to state a claim on which relief can be granted pursuant to Civ.R. 12(B)(6) only when it appears "beyond doubt *** that the [plaintiff] can prove no set of facts warranting relief." *State ex rel. Crabtree v. Franklin Cty. Bd. of Health* (1997), 77 Ohio St.3d 247, 248, 673 N.E.2d 1281. The court may look only to the complaint itself, and no evidence or allegation outside the complaint, when ruling on a Civ.R. 12(B)(6) motion. *State ex rel. Fuqua v. Alexander* (1997), 79 Ohio St.3d 206, 680 N.E.2d 985. Nevertheless, the court may consider material incorporated in the complaint as part of the complaint. *State ex rel. Crabtree; State ex rel. Keller v. Cox* (1999), 85 Ohio St.3d 279, 707 N.E.2d 931. Even so, because Ohio has rejected "fact pleading" in favor of "notice pleading," a plaintiff is not required to prove his or her case through the pleadings in the complaint, since the plaintiff's lack of access to relevant evidence at that stage of the proceedings would allow dismissal of many valid claims. *York v. Ohio State Hwy. Patrol* (1991), 60 Ohio St.3d 143, 573 N.E.2d 1063.

{¶53}  When a trial court construes a complaint for purposes of a motion to dismiss for failure to state a claim, the court must assume that "all factual allegations in the complaint are true." *Tulloh v. Goodyear Atomic Corp.* (1992), 62 Ohio St.3d 541, 544, 584 N.E.2d 729. The court is also required to construe all reasonable inferences in favor of the nonmoving party. *Mitchell v. Lawson Milk Co.,* 40 Ohio St.3d 190, 532 N.E.2d 753. "Since all factual allegations in the complaint are presumed true, only legal issues are presented and an entry of dismissal will be reviewed *de novo.*" *Hunt v. Marksman Prods.* (1995), 101 Ohio App.3d 760, 762, 656 N.E.2d 726.

**{¶54}** In the instant case, *Noerr–Pennington* immunity is an affirmative defense that must be pleaded in an answer or it is waived under Civ.R. 8(C) (affirmative defenses). *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193.

**{¶55}** As set forth above, the function of a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief may be granted is to test the legal sufficiency of a claim, generally contained in the complaint. *Zeigler v. Bove* (Dec. 23, 1998), Richland App. No. 98CA65, 1999 WL 4080. The defense of failure to state a claim on which relief may be granted asserts that the pleader has failed to plead the operative legal grounds relating to a claim. *Mitchell v. Lawson Milk Co.* (1988), 40 Ohio St.3d 190, 532 N.E.2d 753.

**{¶56}** Since affirmative defenses typically rely on matters beyond the pleadings, affirmative defenses normally cannot be raised in a Civ.R. 12(B)(6) motion to dismiss. \*\*\* 'An exception exists, however, where the existence of the affirmative defense is obvious from the face of the complaint itself.' \* \* \* *Mills v. Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, 58, 320 N.E.2d 668 ('a Civ.R. 12(B)(6) motion will lie to raise the bar of the statute of limitations when the complaint shows on its face the bar of the statute').

**{¶57}** The allegations against Jeffries in Appellant's Complaint state:

**{¶58}** "19. On or about September 3, 2013, Jeffries contacted Ault and stated he would contact the members of Louisville City Council and seek to have the Fire Chief (Lanzer) removed from offices. Jeffries stated he was unhappy with the Ohio Fire Code Examination and inspection process, reports, and signage."

**{¶59}** "22. *** Ault then terminated Lanzer's employment. Lanzer asked Ault the reason for which he was being terminated and Ault replied that Lanzer had done nothing wrong and that Lanzer's employment was being terminated only for political reasons."

**{¶60}** "35. Upon information and belief, Jeffries, in an effort to avoid his obligation under Ohio law, and to interfere with the duties and responsibilities of the Louisville Fire Department, sought to influence, and did influence some or all of the other Defendants to terminate Lanzer's employment."

**{¶61}** Based on the allegations as set forth in the Complaint, we find that the trial court did not err in finding that the Noerr-Pennington doctrine applies and that Appellee Jeffries is immune from civil liability for his actions as he had a right to petition City Council for redress for his grievances.

**{¶62}** Furthermore, we do not find that Appellee Jeffries was petitioning the City Council to perform an illegal act by expressing his displeasure and desire to have the Fire Chief's employment terminated.

**{¶63}** Appellant's Third Assignment of Error is overruled.

**{¶64}** For the foregoing reasons, the judgment of the Court of Common Pleas of Stark County, Ohio, is affirmed.

By: Wise, J.

Farmer, P. J., and

Gwin, J., concur.

JWW/d 1116