**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *McGowan v. Medpace, Inc.,* **Slip Opinion No. 2017-Ohio-1340.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

**SLIP OPINION NO. 2017-OHIO-1340**

**MCGOWAN, APPELLANT, *v.* MEDPACE, INC., APPELLEE.**

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *McGowan v. Medpace, Inc.,* Slip Opinion No. 2017-Ohio-1340.]**

*Appeal dismissed as having been improvidently accepted.*

(No. 2015-1756—Submitted February 8, 2017—Decided April 12, 2017.)

APPEAL from the Court of Appeals for Hamilton County,

Nos. C-140634 and C-140652, 2015-Ohio-3743.

_____

{¶ 1} This cause is dismissed as having been improvidently accepted.

{¶ 2} The court orders that the opinion of the court of appeals may not be cited as authority except by the parties inter se.

O'CONNOR, C.J., and O'DONNELL, KENNEDY, and FRENCH, JJ., concur.

BRUNNER, J., concurs in part and dissents in part, with an opinion.

O'NEILL, J., dissents, with an opinion joined by BRUNNER, J.

CANNON, J., dissents.

TIMOTHY P. CANNON, J., of the Eleventh District Court of Appeals, sitting for FISCHER, J.

JENNIFER L. BRUNNER, J., of the Tenth District Court of Appeals, sitting for DeWINE, J.

_____

**BRUNNER, J., concurring in part and dissenting in part.**

{¶ 3} I join the majority's holding that the opinion of the court of appeals may not be cited as authority except by the parties inter se. I write separately to note that the court's limitation on the authority of the court of appeals' opinion in this case should render dubious further reliance on the First District Court of Appeals' earlier opinions in *Hale v. Volunteers of Am.*, 158 Ohio App.3d 415, 2004-Ohio-4508, 816 N.E.2d 259 (1st Dist.), and *Dean v. Consol. Equities Realty #3, L.L.C.*, 182 Ohio App.3d 725, 2009-Ohio-2480, 914 N.E.2d 1109 (1st Dist.), which the appellate court expressly followed.

{¶ 4} The appellate court recognized that the employment-at-will doctrine is a common-law doctrine and that the termination of an employee "generally does not give rise to an action for damages." 2015-Ohio-3743, 42 N.E.3d 256, ¶ 14. It then noted that this court's decision in *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), created a judicially recognized "exception to this employment-at-will doctrine" when there is a violation of a clearly expressed public policy. 2015-Ohio-3743 at ¶ 15.

{¶ 5} The appellate court went on to state that with respect to claims for wrongful discharge in violation of public policy,

> absent a narrow interpretation of the types of public policy applicable to these claims, the exception becomes the rule. With the continued and ongoing explosion in statutes, governmental regulations, and policies found under the Ohio Revised Code and

2

> the Ohio Administrative Code, as well as federal laws and regulations, if exceptions to the at-will-employment doctrine are not narrowly construed, the so-called "exceptions" will speedily and overwhelmingly undermine and eliminate the concept of at-will employment in this state. The employment-at-will doctrine is, as conceded by all parties herein, the starting point for an employment-law analysis for this type of claim. *This doctrine has remained untouched by the legislature since its inception, and is effectively one of Ohio's most basic "public policies" on employment issues. * * * Such a change in basic Ohio public policy should be left to the legislature, not this court.*

(Emphasis added.) *Id*. at ¶ 22.

**{¶ 6}** With this reasoning, the appellate court essentially states that exceptions, such as the one described in *Greeley*, to judicially created common-law doctrines such as the employment-at-will doctrine should be created only by the legislature. And for this reason, the appellate court relied on its two previous decisions in *Hale* and *Dean* rather than follow *Greeley*.

**{¶ 7}** *Hale* and *Dean* require that the public policy upon which the exception to the employment-at-will doctrine is based must (1) impose an affirmative duty on an employee to report a violation, (2) prohibit an employer from retaliating against an employee who has reported a violation, or (3) protect the public's health and safety. *Hale*, 158 Ohio App.3d 415, 2004-Ohio-4508, 816 N.E.2d 259, at ¶ 46; *Dean*, 182 Ohio App.3d 725, 2009-Ohio-2480, 914 N.E.2d 1109, at ¶ 11-12. Finding no such language in the insurance-fraud statute, the appellate court narrowed *Greeley*, relying on *Hale* and *Dean* as "longstanding case law" even though they were decided 14 and 19 years after this court decided *Greeley*. 2015-Ohio-3743 at ¶ 22. This court's holding that the opinion of the court

of appeals in this case may not be cited as authority except by the parties inter se should cast doubt on the authority of the First District's opinions in *Hale* and *Dean*.

_____

**O'NEILL, J., dissenting.**

{¶ 8} In her verified complaint, appellant, Mary McGowan, M.D., alleges that after she was hired as an executive director by appellee, Medpace, Inc., she became aware of fraudulent prescription-writing practices and patient-privacy and confidentiality violations. Those activities concerned her so greatly that she held a meeting with her staff to advise them that office practices would have to change to prevent further violations, and she shared her concerns with Medpace's chief executive officer ("CEO") and its general counsel.

{¶ 9} McGowan alleges that she was repeatedly asked to sign prescription renewals for incorrect amounts and it was explained to her that her predecessor had always done this to save patients money. McGowan refused to sign the renewals and explained that that practice was insurance fraud.

{¶ 10} McGowan further alleges that she noticed that the charts for patients participating in two different studies were combined and that the charts included the patients' full names, rather than just their initials, as is customary in medical studies. McGowan thought this was a clear violation of the patients' privacy rights, because the studies were being conducted by two different entities, and McGowan did not think it was right that study monitors could see all of the patients' personal information, as opposed to just their initials. McGowan also noticed that Medpace's practice of leaving patient charts open on tables outside the exam rooms had the potential of exposing confidential patient information to anyone walking by and was another clear violation of state and federal patient-privacy laws.

{¶ 11} McGowan held a staff meeting and stated that she would not be filling prescriptions for incorrect amounts of medication. She also told the staff to separate the charts for the patients being seen in a private practice from the charts

4

for the participants in Medpace's medical studies and to dispose of old charts in order to conform to state and federal patient-privacy laws. Shortly after the staff meeting and after she brought her concerns to Medpace's CEO and general counsel, McGowan was removed from her supervisory role at Medpace and was terminated.

{¶ 12} McGowan filed a complaint alleging that her employment was terminated in retaliation for her good-faith complaints about insurance fraud under Ohio law and about violations of the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub.L. No. 104-191, 110 Stat. 1936, codified as amended in various sections of Titles 18, 26, 29, and 42 of the United States Code.

{¶ 13} Following a nine-day trial, a jury unanimously concluded that McGowan's termination was retaliatory and constituted a wrongful discharge for which she is entitled to damages. Notwithstanding the jury's unanimous verdict, the First District Court of Appeals reversed the judgment and found that Medpace was entitled to a directed verdict based on the erroneous legal conclusion that McGowan's wrongful-discharge claim was not based on sufficiently clear public policy. The court of appeals concluded that neither R.C. 2913.47 (the Ohio insurance-fraud statute) nor HIPAA imposes an affirmative duty on employees to report a violation, expressly prohibits employer retaliation, or protects public health and safety. 2015-Ohio-3743 at ¶ 23, 25-27. This is nonsense.

{¶ 14} Ohio law is clear that "public policy warrants an exception to the employment-at-will doctrine when an employee is discharged or disciplined for a reason which is prohibited by statute." *Greeley v. Miami Valley Maint. Contrs.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), paragraph one of the syllabus. A motion for a directed verdict should be granted when, "construing the evidence most strongly in favor of the party opposing the motion, the trial court finds that reasonable minds could come to only one conclusion and that conclusion is adverse to such party." *Limited Stores, Inc. v. Pan Am. World Airways, Inc.*, 65 Ohio St.3d

66, 73, 600 N.E.2d 1027 (1992), citing Civ.R. 50(A)(4). Instead of applying the law of this court and affirming the jury verdict that was reached based on that law, the court of appeals applied its own case law as set forth in *Hale v. Volunteers of Am.*, 158 Ohio App.3d 415, 2004-Ohio-4508, 816 N.E.2d 259 (1st Dist.), and *Dean v. Consol. Equities Realty #3, L.L.C.*, 182 Ohio App.3d 725, 2009-Ohio-2480, 914 N.E.2d 1109 (1st Dist.), to conclude that McGowan's claim failed as a matter of law. 2015-Ohio-3743 at ¶ 17-19, 27. In plain terms, the court of appeals found that no facts alleged in the complaint could form the basis for recovery. This complaint in simple terms alleged a firing for resisting HIPAA violations and a pattern of organized insurance fraud. The appellate court misapplied the law of Ohio and Civ.R. 50 in this case.

{¶ 15} Dismissing this case as improvidently allowed and restricting the precedential value of this erroneous appellate decision does nothing to preserve the law as established in *Greely*. Likewise, it deprives McGowan of the jury verdict in her favor and the damages awarded by the jury. I dissent.

BRUNNER, J., concurs in the foregoing opinion.

_____

Freking, Myers & Reul, L.L.C., Randolph H. Freking, and Brian P. Gillan, for appellant.

Thompson Hine, L.L.P., Deborah S. Brenneman, and George B. Musekamp, for appellee.

The Gittes Law Group, Frederick M. Gittes, and Jeffrey P. Vardaro, urging reversal for amicus curiae, Ohio Employment Lawyers Association.

_____