[Cite as *McGlothen v. Fairborn*, 2019-Ohio-141.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**GREENE COUNTY**

| | | |
|---|---|---|
| DAVID MCGLOTHEN | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 2018-CA-30 |
| | : | |
| v. | : | Trial Court Case No. 2017-CV-0454 |
| | : | |
| CITY OF FAIRBORN | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 18th day of January, 2019.

. . . . . . . . . .

SHAWN A. ROMER, Atty. Reg. No. 0084251, 2012 W. 25th Street, Suite 716, Cleveland, Ohio 44113
    Attorney for Plaintiff-Appellant

JEFFREY C. TURNER, Atty. Reg. No. 0063154, DAWN M. FRICK, Atty. Reg. No. 0069068, and KATHERINE L. EPLING, Atty. Reg. No. 0091577, 8163 Old Yankee Street, Suite C, Dayton, Ohio 45458
    Attorneys for Defendant-Appellee

. . . . . . . . . . . .

HALL, J.

{¶ 1} David McGlothen appeals from the trial court's entry of summary judgment for the City of Fairborn on his claim for wrongful discharge in violation of public policy. We conclude that sections 106.1 and 307.1 of the Ohio Building Code do not express a clear public policy as is necessary to support a claim for retaliatory employment action against an employee who enforces those sections. Consequently McGlothen failed to meet his burden to establish that Fairborn violated a clear public policy when it discharged him, and we affirm.

## I. Summary-Judgment Evidence and Procedural History

{¶ 2} McGlothen was the Chief Building Official for the City of Fairborn. In that role, he was responsible for overseeing all the other building inspectors and interpreting and enforcing the Ohio Building Code. McGlothen reported directly to the Community Development Director, then Michael Gebhart. McGlothen also regularly interacted with Fairborn's Economic Development Director, then Rob Anderson.

{¶ 3} In early 2016, Anderson was contacted about a company called Tangible Solutions, which specialized in additive manufacturing and was considering expansion to Fairborn. A building owned by Industrial IRG was chosen for Tangible to use. The plan was for Tangible to lease part of that building and alter the leased space to suit its needs. The first phase of the project was to get the shell of the building ready for occupancy. The building had been vacant for a while, and it was known that there were existing violations of the Ohio Building Code and other issues. IRG hired Construction Resources 1 (CR1) to do the work, which included resolving issues with the roof, mold, fire suppression, and the fire alarm.

{¶ 4} There were several meetings, emails, and conversations about the repairs and alterations among those involved in the project. McGlothen and CR1's architect differed in their interpretations of what the Ohio Building Code required. McGlothen grew concerned because he believed that CR1 was working on the building without a plan approved by the city. In particular, McGlothen was concerned that specialized fire-suppression systems were needed. McGlothen believed that Gebhart was pressuring him to let the work continue, but McGlothen did not back down. On January 6, 2017, McGlothen issued an adjudication order requiring that work on the project stop until plans that complied with the Ohio Building Code were approved.

{¶ 5} The next day, January 7, McGlothen sent an email to CR1 representative David Brown (and copied it to the city's solicitor) saying, in part:

> We have had numerous meetings and other communications over the last few months. I have supplied you with copies of sections from the building code which explains that the building code is mandated by the Ohio Revised Code and therefore is State law. I understand that you have encountered building officials in other jurisdictions that have chosen to ignore their legal requirement to follow the rules specified in the Ohio Revised Code.

> I do not feel compelled to ignore these rules based on the fact that someone else will. I am not compelled to lower my enforcement actions to the lowest level achieved by my peers. I hope that you understand that you are subject to these same rules.

> I take exception with your efforts to use your link to a City supported

project to coerce my superiors into allowing you to ignore the rules of the State and trying to damage my name in the process. I am not an attorney, but I believe there are laws against coercion. I take great pride in the fact that I hold more State of Ohio Certifications than any of my peers in the Miami Valley and I do not appreciate your efforts to discredit me.

In the email, McGlothen also criticized the way that the project has been handled and emphasized the importance of building plans, regular inspections, and his safety concerns. In response to the email, Brown contacted Rob Anderson and expressed concerns about continuing with the project. Brown said that he was concerned about IRG or Tangible being retaliated against, and he expressed doubt about IRG remaining in Fairborn.

{¶ 6} McGlothen sent the email just before he left on a planned vacation. When he returned to work on January 18, McGlothen was asked to meet with Gebhart, the acting City Manager (Peter Bales), and others. At the meeting, McGlothen was discharged from his employment with the city. McGlothen said that he was told the January 7 email was "the last straw" in a series of customer service complaints that the city had received.

{¶ 7} In July 2017, McGlothen filed a complaint asserting three claims against the City of Fairborn, Peter Bales, and Michael Gebhart: (1) violation of Ohio's Whistleblower Act, (2) wrongful discharge in violation of the public policy set forth in the whistleblower statute; and 3) wrongful discharge in violation of the public policy set forth in sections 106.1 and 307.1 of the Ohio Building Code. Later, McGlothen voluntarily dismissed Bales and Gebhart, leaving Fairborn as the only defendant.

{¶ 8} Fairborn moved for summary judgment on all three claims. On July 10, 2018,

the trial court granted the motion for summary judgment on McGlothen's three claims.

{¶ 9} McGlothen appeals.

## II. Analysis

{¶ 10} The sole assignment of error alleges:

The trial court erred when it granted summary judgment in favor of Defendant and held that there is no clear public policy found in the Ohio Building Code and/or favoring workplace fire safety for purposes of satisfying a claim for wrongful termination in violation of public policy.

McGlothen challenges here only the trial court's entry of summary judgment on his claim for wrongful discharge in violation of the public policy expressed in the Ohio Building Code.

{¶ 11} Summary judgment is proper if the moving party shows "(1) that there is no genuine issue as to any material fact; (2) that the moving party is entitled to judgment as a matter of law; and (3) that reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, who is entitled to have the evidence construed most strongly in his favor." *Harless v. Willis Day Warehousing Co.*, 54 Ohio St.2d 64, 66, 375 N.E.2d 64 (1978); Civ.R. 56(C).

{¶ 12} "In Ohio, the common-law doctrine of employment at will governs employment relationships." *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 11. But "a cause of action for wrongful discharge in violation of public policy may exist as an exception to the general rule." *Id.*, citing *Painter v. Graley*, 70 Ohio St.3d 377, 639 N.E.2d 51 (1994), paragraph three of the syllabus, and *Greeley v. Miami Valley Maintenance Contrs., Inc.*, 49 Ohio St.3d 228, 551 N.E.2d 981 (1990),

paragraph one of the syllabus. There are four elements that a plaintiff must establish to succeed on a claim of wrongful discharge in violation of public policy: "(1) a clear public policy exists and is manifested in a state or federal constitution, in statute or administrative regulation, or in the common law (the clarity element), (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element), (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element), and (4) the employer lacked an overriding legitimate business justification for the dismissal (the overriding-justification element)." (Citation omitted.) *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 9. "The clarity and jeopardy elements involve questions of law; the causation and overriding-justification elements involve questions of fact." (Citation omitted.) *Id.*

{¶ 13} The parties agree that the clarity element is at issue here. "Under the clarity analysis, we must determine whether there exists in Ohio a public policy against retaliatory employment actions like the one alleged by [the plaintiff]." *Id.* at ¶ 11. The "clear public policy" may "deriv[e] from the state or federal constitutions, a statute or administrative regulation, or the common law." (Citations omitted.) *Dohme* at ¶ 18. Here, McGlothen cites sections 106.1 and 307.1 of the Ohio Building Code as the source of the public policy. As such, these sections and the intent behind their promulgation must be the focus of our analysis.

{¶ 14} These are the sections of the Building Code on which McGlothen relies:

106.1 **Submittal documents**. Construction documents, statement of special inspections required and other data shall be submitted in two or

more sets with each application for an approval. Before beginning the construction of any building for which construction documents are required under section 105, the owner or the owner's representative shall submit construction documents to the building official for approval. When construction documents have been found to be in compliance with the rules of the board of building standards in accordance with section 107 by a certified building department, that determination of compliance shall be deemed sufficient to obtain approval for construction pursuant to section 105.2 and the building official shall issue the certificate of plan approval.* * *

* * *

307.1 **High-hazard Group H**. High-hazard Group H occupancy includes, among others, the use of a building or structure, or a portion thereof, that involves the manufacturing, processing, generation or storage of materials that constitute a physical or health hazard in quantities in excess of those allowed in control areas complying with Section 414, based on the maximum allowable quantity limits for control areas set forth in Tables 307.1(1) and 307.1(2). Hazardous occupancies are classified in Groups H-1, H-2, H-3, H-4 and H-5 and shall be in accordance with this section, the requirements of Section 415 and the *fire code*. * * *

(Emphasis sic.).

{¶ 15} The issue here is whether these sections express a clear public policy prohibiting employment action against employees related to their enforcement of these sections. We note that neither section expressly prohibits retaliation against employees

who enforce these sections of the Building Code. Indeed, neither section prohibits retaliation against an employee period. The intent of section 106.1 appears to be to establish the information that one must provide to the building official in order to obtain approval for construction plans. And the intent of section 307.1 appears to be to define what uses fall under the high-hazard occupancy classification and what rules such occupancies must follow. The public policy underlying these sections does not justify the creation of an exception to the employment-at-will doctrine to protect employees like McGlothen.

{¶ 16} To be sure, the public policy underlying these sections, and the Building Code generally, is to help ensure that buildings are safe, which includes mitigating the risk of fire hazards. This leads to workplaces that are safe from fire hazards. But that public policy does not justify the creation of an exception to the employment-at-will doctrine to protect employees like McGlothen, who enforce the building code. As the Supreme Court of New Mexico has said, "[e]very statute enacted by the legislature is in a sense an expression of public policy but not every expression of public policy will suffice to state a claim for retaliatory discharge." *Shovelin v. Central New Mexico Elec. Co-op, Inc.*, 115 N.M. 293, 850 P.2d 996, 1006 (1993).

{¶ 17} A wrongful-discharge claim protects employees only when the discharge violates a clear mandate of public policy prohibiting retaliatory employment action expressed in statutory enactments, administrative rules, et cetera. For example, the Ohio Supreme Court has concluded that R.C. 4123.90, which expressly prohibits retaliation against injured workers who have filed, instituted, or pursued a workers' compensation claim, "expresses a clear public policy prohibiting retaliatory employment action against

injured employees." *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, ¶ 22. The Court has also concluded that Ohio's Whistleblower Statute, which protects employees for reporting certain information to outside authorities if certain requirements are satisfied, expresses a clear public policy protecting employees who report certain matters from retaliatory employment action. *Kulch v. Structural Fibers, Inc.*, 78 Ohio St.3d 134, 153, 677 N.E.2d 308 (1997). Similarly, the Court has concluded that the federal Occupational Safety and Health Act (OSHA) expresses "the clear public policy of this state encouraging safety in the workplace and forbidding retaliation against those who file OSHA complaints aimed at correcting unsafe and unhealthy working conditions." *Id.* at 154.

{¶ 18} The sections of the Ohio Building Code that McGlothen relies on as support for his public-policy claim merely state a procedural requirement (section 106.1) and a use and occupancy classification (section 307.1). Neither section is directly related to workplace fire safety. *Compare Hale v. Volunteers of Am.*, 158 Ohio App.3d 415, 2004-Ohio-4508, 816 N.E.2d 259, ¶ 47 (1st Dist.) (holding that the sections of the Ohio Administrative Code that plaintiffs relied on as support for their public-policy claim "merely provided baseline technical criteria" that the defendant had to meet in order to be licensed to operate); *Morris v. Dobbins Nursing Home*, 12th Dist. Clermont No. CA2010-12-102, 2011-Ohio-3014, ¶ 26 (sections of the Code of Federal Regulations that plaintiff relied on "merely provided baseline technical criteria" that defendant had to meet in order to operate the nursing home facility); *Lanzer v. Louisville*, 2016-Ohio-8071, 75 N.E.3d 752, ¶ 38 (5th Dist.) (the statute and administrative code sections on which plaintiff relied were procedural in nature, "detailing the procedure which must be followed to gain access to

premises for the purposes of conducting inspections"); *Gargas v. Streetsboro*, 11th Dist. Portage No. 2000-P-0095, 2001 WL 1077828, *7 (Sept. 14, 2001) (saying that the statutes and code sections on which plaintiff relied "identifying how building construction is to be inspected, defining who has the legal authority to conduct such inspections, and explaining how inspectors are certified in enforcing building laws" did not show a clear public policy or that discharge to prevent enforcement of building laws violated that public policy). Any exception to the employment-at-will doctrine should be narrowly applied. *See Dean v. Consol. Equities Realty #3, L.L.C.*, 182 Ohio App.3d 725, 2009-Ohio-2480, 914 N.E.2d 1109, ¶ 12 (1st Dist.). Neither section 106.1 or 307.1 expresses a clear public policy against discharging an employee for enforcing the Ohio Building Code sufficient to warrant abrogating the employment-at-will doctrine.

{¶ 19} Finally, McGlothen quotes from our decision in *Dohme* in which we found "a clear public policy favoring workplace fire safety." *Dohme*, 170 Ohio App.3d 593, 2007-Ohio-865, 868 N.E.2d 701, ¶ 24 (2d Dist.). "Therefore," we said, "retaliation against employees who raise concerns relating to workplace fire safety contravenes a clear public policy." *Id*. But we made our finding, based on various state and federal statutes and regulations, sua sponte. The Ohio Supreme Court reversed our judgment, stating: "[A] court may not presume to sua sponte identify the source of that policy. * * * An appellate court may not fill in the blanks on its own motion." *Dohme v. Eurand Am., Inc.*, 130 Ohio St.3d 168, 2011-Ohio-4609, 956 N.E.2d 825, ¶ 23.

{¶ 20} The Ohio Building Code, and sections 106.1 and 307.1 in particular, does not encourage workplace fire safety by manifesting a clear public policy that would prohibit employment action against those who enforce the building code. These sections

therefore do not express a clear public policy for purposes of supporting a wrongful discharge claim.

### III. Conclusion

{¶ 21} Because McGlothen failed to establish that he was discharged in violation of a clear public policy, he has failed to satisfy the clarity element of his wrongful-discharge claim as a matter of law. Consequently, McGlothen cannot succeed on his claim for wrongful discharge in violation of public policy, and the trial court properly granted Fairborn summary judgment on the claim. The sole assignment of error is overruled.

{¶ 22} The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and TUCKER, J., concur.

Copies sent to:

Shawn A. Romer
Jeffrey C. Turner
Dawn M. Frick
Katherine L. Epling
Hon. Stephen Wolaver